# **<u>Exhibit 1.A</u>**

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | |
|---|---|
| | CIVIL DIVISION |
| NLMK PENNSYLVANIA, LLC and | No. GD-21- 000719 |
| NLMK INDIANA, LLC, | |
| | **COMPLAINT** |
| Plaintiffs, | |
| | File on behalf of PLAINTIFFS |
| v. | |
| | Counsel of record for Plaintiffs: |
| UNITED STATES STEEL CORPORATION, | WILLIAM PIETRAGALLO, II, ESQ. |
| | PA I.D. No. 16413 |
| Defendant. | |
| | Pietragallo Gordon Alfano Bosick & Raspanti, LLP |
| | Firm I.D. No. 834 |
| | The Thirty-Eight Floor |
| | One Oxford Centre |
| | Pittsburgh, PA 15219 |
| | (412) 263-2000 |
| | (412) 263-2001 (Fax) |
| | |
| | SANFORD LITVACK, ESQ. |
| | *Pro hac vice* to be presented |
| | |
| | ANDREW L. POPLINGER, ESQ. |
| | *Pro hac vice* to be presented |
| | |
| | R. MATTHEW BURKE, ESQ. |
| | *Pro hac vice* to be presented |
| | |
| | Chaffetz Lindsey LLP |
| | The Thirty-Third Floor |
| | New York, NY 10019 |
| | (212) 257-6960 |
| | (212) 257-6950 (Fax) |
| | |
| | **JURY TRIAL DEMANDED** |

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

CIVIL DIVISION

NLMK INDIANA, LLC and
NLMK PENNSYLVANIA, LLC,

No. GD-21-

          Plaintiffs,                                    **JURY TRIAL DEMANDED**

     v.

UNITED STATES STEEL CORPORATION,

          Defendant.

### <u>NOTICE TO DEFEND</u>

YOU HAVE BEEN SUED IN COURT.  If you wish to defend against the claims set forth in the following pages, you must take action within TWENTY (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you.  You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff.  You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.  IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

LAWYER REFERRAL SERVICE
The Allegheny County Bar Association
11th Floor Koppers Building, 436 Seventh Avenue
Pittsburgh, Pennsylvania 15219
Telephone: 412-261-5555
www.acbalrs.org

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

CIVIL DIVISION

NLMK PENNSYLVANIA, LLC and
NLMK INDIANA, LLC,

No. GD-21-

        Plaintiffs,

**JURY TRIAL DEMANDED**

    v.

UNITED STATES STEEL CORPORATION,

        Defendant.

## **COMPLAINT**

NOW COME Plaintiffs NLMK Pennsylvania, LLC and NLMK Indiana, LLC, (collectively, "Plaintiffs" or "NLMK"), and complain of Defendant United States Steel Corporation as follows:

## **THE PARTIES**

1.    Plaintiff, NLMK Pennsylvania, LLC, is a limited liability company organized under the laws of the State of Delaware, with its principal place of business at 15 Roemer Boulevard, Farrell, Pennsylvania, 16121.

2.    Plaintiff, NLMK Indiana, LLC, is a limited liability company organized under the laws of the State of Indiana, with its principal place of business at 6500 S. Boundary Road, Portage, Indiana, 56368.

3.    NLMK, a leading U.S. steel company, owns and operates steel mills in Farrell and Sharon in Pennsylvania, and Portage, Indiana.  NLMK imports semi-finished steel slab to its

U.S. mills, rolls the slab into finished steel products, such as high quality steel sheet and coil, and sells them to a wide range of industries throughout the United States. To date, NLMK has invested more than $800 million in these facilities, restoring much-needed jobs to the local and regional communities. Among these mills, NLMK directly employs over 1,100 workers and generates another 8,400 jobs, indirectly.

4.  United States Steel Corporation ("U.S. Steel" or "Defendant") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 600 Grant Street, Pittsburgh, Pennsylvania, 15219. U.S. Steel is a fully integrated steel producer with operations in the United States, Canada, and Europe, where it manufactures semi-finished steel slab that it uses to produce finished steel products, which it sells to customers in direct competition with NLMK.

## JURISDICTION AND VENUE

5.  This Court has subject matter jurisdiction because it has "unlimited original jurisdiction of all actions and proceedings, including all actions and proceedings heretofore cognizable by law or usage in the courts of common pleas," and no statute or rule vests jurisdiction in another court. 42 Pa.C.S. § 931(a); Pa. Const. Art. V, § 5(b).

6.  This Court has personal jurisdiction pursuant to 42 Pa.C.S. §§ 5301(a)(2) and 5301(b) because U.S. Steel carries out a continuous and systematic part of its general business in Pennsylvania and because it is qualified as a foreign corporation under the laws of Pennsylvania.

7.  Venue is proper in this Court pursuant to Pa. R. Civ. P. 2179(a) because U.S. Steel has its principal place of business and regularly conducts business in Allegheny County.

## NATURE OF THE ACTION

8.      NLMK brings this action to recover the substantial damages caused by U.S.
Steel's anticompetitive, unfair, and unlawful trade practices, which have inflicted in excess of
$100 million in damages on NLMK.  In particular, U.S. Steel successfully engaged in a pattern
of misrepresentation and deception in order to induce the United States Department of
Commerce (the "Department" or "Commerce") to deny NLMK tariff relief to which it was
entitled, all for the purpose of placing NLMK at a competitive disadvantage.

9.      In March 2018, former President Trump, acting pursuant to Section 232 of the
Trade Expansion Act of 1962 (19 U.S.C. § 1862, as amended), issued a Proclamation imposing a
tariff of 25% on all steel imports (with certain exceptions not relevant here).  U.S. Steel had
lobbied the administration to impose the tariffs, hoping that they would hobble competitors, such
as NLMK, that rely on imported steel slab necessary to manufacture competing products.
Saddling NLMK and other U.S. Steel competitors with tariffs would increase Defendant's
competitors' costs and impede their ability to compete with Defendant.

10.      However, U.S. Steel's lobbying efforts fell short.  While the President imposed
the tariffs, the operative Proclamation did not guarantee that tariffs would be imposed on all steel
imports.  Instead, the Proclamation recognized that the tariffs could have potentially devastating
consequences for U.S. businesses, such as NLMK, that rely on imports of steel products that they
cannot obtain in the domestic market.  The Proclamation therefore directed the Department of
Commerce to grant U.S. businesses tariff exclusions for imported steel products that are not
available in sufficient quality or quantity in the United States.

11.      Pursuant to the Proclamation, the Department established a process whereby
affected companies could file requests to exclude particular imports from the tariffs.  Other

domestic steel companies could object to a request *if* the objector demonstrated that it could and would supply the requestor with the particular product in the amount it required and within eight weeks. This case arises from U.S. Steel's efforts to unfairly compete with NLMK by brazenly abusing this process.

12.    NLMK and U.S. Steel are direct competitors who both serve customers in the market for pipe and tube, service center, yellow goods, agricultural, construction, and coated conversion products.

13.    Between 2018 and the present, NLMK submitted 162 requests for exclusions from the Section 232 tariffs for semi-finished steel slab, which it must have to make its finished products. The majority of NLMK's requests covered various "10-inch slab." The remainder of NLMK's requests covered various "8-inch slab."

14.    U.S. Steel could not and would not supply NLMK with the slab it needed, and therefore lacked any legitimate basis to object to NLMK's requests. Nonetheless, it did.

15.    U.S. Steel objected not only to NLMK's requests, but to more than 450 exclusion requests covering steel slab. In doing so, U.S. Steel expressly committed to producing and being willing to provide over 36 million tons of steel slab to its competitors. However, even if U.S. Steel had the ability to make all the specific grades and dimensions of slab the requesters required (and it did not), and even if it devoted the entirety of its domestic production capacity solely to making steel slab for sale to its competitors, U.S. Steel could not supply the quantity of slab it told the Department that it would provide to its competitors.

16.    In its objections to NLMK's requests, U.S. Steel specifically represented to the Department that it could produce "the entire spectrum of grades and dimensions of steel slabs identified in NLMK's requests and has significant excess production capacity and is able to meet

4

100% of the volume cited" in NLMK's exclusion requests. This was simply not true.

17.     Although it represented it could supply NLMK with the 10-inch slab NLMK required, U.S. Steel did not then have and does not now have a single domestic facility capable of making any 10-inch slab, which represented the overwhelming majority of NLMK's slab requirements. U.S. Steel's objections to all of NLMK's requests for exclusion for 10-inch slabs were totally baseless.

18.     With respect to 8-inch slab, at the time of its objections in 2018, U.S. Steel would not sell or offer to sell anything but small amounts of slab feedstock on a spot basis to NLMK. Indeed, in the period leading up to NLMK's 2018 exclusion requests, NLMK made nearly 50 attempts to obtain slab from U.S. Steel, but was only able to acquire a small fraction of its monthly requirements. Nevertheless, U.S. Steel objected to all of NLMK's requests for exclusions concerning 8-inch slabs, representing that it could and would supply NLMK with all the slab it required. That representation was false.

19.     Upon information and belief, based on U.S. Steel's misrepresentations, Commerce wrongly denied all 162 of NLMK's exclusion requests.[1]

20.     NLMK has thus been forced to pay nearly $200 million in tariffs from which it should have and would have been exempt, but for U.S. Steel's dishonest and anticompetitive misrepresentations. U.S. Steel's submission of false representations to support its objections were intended to, and in fact did, inflict significant competitive harm on NLMK, in violation of Pennsylvania law.

---

[1] NLMK sued United States in the Court of International Trade for its wrongful denials. That litigation has been settled.

## FACTUAL BACKGROUND

### A.    NLMK's Business

21.    NLMK's mills supply high-quality steel sheet and coil to the construction, automotive, pipe and tube, and heavy equipment industries.  More than 250 businesses in 30 states depend on NLMK's products.

22.    NLMK's Pennsylvania facility makes the finished products it sells from slab feedstock acquired elsewhere, usually imported.

23.    NLMK has limited capacity to produce 8-inch slab in Indiana for use at that facility, but needs to acquire additional feedstock elsewhere, usually imported.

24.    Competition among producers of finished steel products is fierce.  Small differences in price can make the difference between losing and winning business.  Lost business for one company is generally a ton-for-ton gain for a competitor.

25.    One of NLMK's biggest competitors is U.S. Steel.  Like NLMK, U.S. Steel sells its finished products, such as steel coil, in the U.S. market.

26.    U.S. Steel is an integrated producer, capable of producing the steel slab it needs to feed its own rolling operations to manufacture finished products.  U.S. Steel uses virtually all the steel slab it produces for its own operations.

27.    It is more profitable for integrated producers such as U.S. Steel to use the slabs they produce to manufacture and sell their downstream finished products than to sell their slab feedstock.  Accordingly, U.S. Steel, and others, have no incentive to divert their limited feedstock to competitors for their use in making competing finished products.

28.    Although NLMK purchases as much steel slab as it can in the U.S. market, given the market realities, the volume available has always been limited.  NLMK has therefore had to

import steel slab feedstock to support its production of finished products.

29.     To fill a majority of its customers' orders, NLMK requires slabs that are 250-255 mm thick, nominally referred to as "10-inch slab."  NLMK, however, cannot source any of this 10-inch slab domestically because there is only one domestic producer with a mill capable of making 10-inch slab, which is ArcelorMittal.  That producer, ArcelorMittal, consumes all of its slab for its own operations, and did not object to any of NLMK's requests; it sought its own exclusions for slabs it imports from its plant in Mexico.

30.     For its operations in Indiana and a small portion of its Pennsylvania operations, NLMK uses thinner slab that is nominally "8-inch slab."

31.     In the two-year period between 2016 and 2018, when the Section 232 tariffs went into effect, NLMK made more than 50 attempts to purchase slab from U.S. Steel.

32.     Notwithstanding its efforts, NLMK was able to obtain only a fraction of the feedstock it needed to supply its mills—and even then, only intermittently on the spot market.

**B.     NLMK's Requests for Exclusion from Section 232 Tariffs**

33.     Because the slabs NLMK requires to compete with U.S. Steel were not available in the U.S. market, NLMK applied for and was entitled to exemptions from the tariffs on these products.  In total, NLMK filed more than 160 requests for exclusion from the Section 232 tariffs.

34.     NLMK's filings included 111 requests with respect to slab imports from Russia and 51 requests for exclusion for imports of Brazilian slab.

35.     With respect to Brazil, steel imports were exempt from the Section 232 tariffs, but were subject to a strict quota.  However, as with respect to the tariffs, if a requester could not procure sufficient amounts of a particular product in the United States, it was entitled to an

exclusion from the quota.

36.     U.S. Steel objected to every one of NLMK's requests covering steel slab from both Russia and Brazil.

37.     NLMK filed its first requests in April 2018, when it submitted 85 requests for exclusion from the Section 232 tariffs for slabs imported from Russia.  Of these 85 requests, 50 covered 10-inch slabs.  The remaining 35 requests covered 8-inch slabs.  U.S. Steel filed objections to all 85 requests, and all 85 requests were denied.

38.     Between August and November 2019, following the denial of its original 85 exclusion requests, NLMK filed 51 requests for exclusions from the quotas imposed on imports of steel from Brazil, all covering 10-inch slabs.  Again, U.S. Steel objected, this time relying on the prior 2018 denials.

39.     Between June and August 2020, Commerce denied these requests.  Upon information and belief, the Department relied upon U.S. Steel's objections in denying the requests.

40.     In July 2020, NLMK filed 26 additional requests for exclusion from the tariffs for 10-inch slabs from Russia.  For a third time, U.S. Steel objected, referring back to the prior denials.  In October and November 2020, Commerce again denied NLMK's requests.

41.     U.S. Steel made false representations, which were intended to, and did, bring about the wrongful denial of all of NLMK's requests and impose competitive harm on NLMK.

42.     Upon information and belief, in addition to its misrepresentations in its formal submissions to Commerce, U.S. Steel also engaged in a series of *ex parte* communications with the Department while NLMK's requests were pending.  *See* Management Alert:  Certain Communications by Department Officials Suggest Improper Influence in the Section 232

Exclusion Request Review Process, Final Memorandum No. OIG-20-003-M (Oct. 28, 2019), at 3, *available at* https://www.oig.doc.gov/OIGPublications/OIG-20-003-M.pdf.

43.     Upon information and belief, U.S. Steel made additional misrepresentations to the Department during these *ex parte* meetings regarding its ability, capacity, and willingness to supply NLMK with steel slab and its dealings with NLMK.

44.     Upon information and belief, U.S. Steel's objections and representations were accepted as true by the Department, which did not conduct any independent investigation to verify U.S. Steel's representations, including whether it would fulfill the quantity of slab it stated it was able to provide.  *See* U.S. Gov't Accountability Office, GAO-20-517, Steel and Aluminum Tariffs:  Commerce Should Improve Its Exclusion Request Process and Economic Impact Reviews (2020), at 18, *available at* https://www.gao.gov/assets/710/709387.pdf.

### C.     U.S. Steel's Anticompetitive Abuse of the Tariff Exclusion Process

45.     U.S. Steel lobbied for the Section 232 tariffs, believing the tariffs it sought would hamper its competitors who relied on imported manufacturing inputs, such as slab.  But the President's inclusion of the exclusion process severely limited the tariffs' utility to U.S. Steel as a means of gaining on its domestic competitors like NLMK.

46.     Upon information and belief, having failed to obtain the tariff regime it wanted, U.S. Steel hatched a scheme to prevent its competitors from obtaining the tariff exemptions to which they were plainly entitled.  By misleading the Department into denying exclusions to its competitors, including NLMK, U.S. Steel could force NLMK to pay unwarranted tariffs, thereby driving up NLMK's costs, unfairly limiting its ability to (a) participate in the market, (b) meet contractual obligations to certain of its customers, (c) maintain sales volume; (d) compete with U.S. Steel on price; and (e) make substantial investments to increase its capacity to further compete with U.S. Steel.

9

47.     U.S. Steel objected to more than 450 exclusion requests for steel slab in just the first year of the Section 232 exclusion process, covering 36 million tons of steel slab.  It did so despite knowing that it could not and would not provide this amount of slab to its competitors.

48.     U.S. Steel's plan was never to sell the large volumes of slab covered by the 450 exclusion requests.  Its intention was to gain a competitive edge by systematically and unfairly exploiting the Section 232 process to drive up its competitors' costs.

49.     U.S. Steel lacked any genuine and legitimate basis to object to any, let alone all, of NLMK's 162 exclusion requests between 2018 and 2020.  Nevertheless, it submitted false and misleading objections to the Department, misrepresenting its capacity and intent to provide slabs to NLMK, thereby bringing about the wrongful denial of the tariff exclusions NLMK requested and imposing significant financial harm on its competitor.

      **1.     U.S. Steel's False and Misleading Objections to NLMK's Exclusion Requests for 10-inch Slab**

50.     In May and August 2018, U.S. Steel objected to all 50 of NLMK's exclusion requests covering 10-inch slabs.  As part of its objections, U.S. Steel represented that it was capable of providing NLMK with all of the 10-inch slab it needed, knowing that it did not have a single slab caster in the U.S. capable of making these slabs.

51.     Specifically, in each of its 50 objections U.S. Steel:

- Answered "Yes" to the question:  "Is the steel product type identified in the Exclusion Request currently manufactured by your organization in the United States, or can it immediately be made (within 8 weeks) by your organization, in a company-owned plant in the United States?"  The truthful answer was "No."

- Answered "100%" to the question: "What percentage of total steel product tonnage requirement covered under the Exclusion Request that is the subject of this Objection Filing can your organization manufacture at its U.S. plants on a

10

timely basis?"  The truthful answer was "0%."

52.     In its supplemental written narrative submitted to the Department with each of its objections, U.S. Steel made additional false representations, including that:

- U.S. Steel had "sufficient capacity available to satisfy the customer order underlying the exclusion request[s]" for 10-inch slabs.

- 10-inch slabs were "standard products that U.S. Steel is capable of making."

- U.S. Steel produced "the entire spectrum of grades and dimensions of steel slabs identified in NLMK's requests and has significant excess production capacity and is able to meet 100% of the volume cited in NMLK's [sic] exclusion request."

53.     Each of those statements was knowingly false and was designed to harm NLMK and injure competition by causing Commerce to deny the exclusions.

54.     U.S. Steel made further misrepresentations in October 2018 when it submitted its sur-rebuttals.  These sur-rebuttals were, as U.S. Steel knew, the last word in the Section 232 exclusion process.

55.     With free reign, U.S. Steel told Commerce that it could make an *"**identical product**"* to the 10-inch slab that was the subject of NLMK's exclusion requests.

56.     U.S. Steel also represented that it had had "multiple exchanges and proposals . . . [with] NLMK throughout 2018" concerning sourcing 10-inch slabs, which could be evidenced by "actual production orders consummated, and the ongoing contract discussions for 2019."

57.     Each of those representations to Commerce was false.  U.S. Steel did not then or now have a single operating mill in the United States capable of producing 10-inch slab.  It had not then and has not since sold 10-inch slab to NLMK or anyone else.

58.     U.S. Steel made these fraudulent statements to interfere with NLMK's business

11

and impede NLMK from effectively competing with U.S. Steel in the market.

59.     Upon information and belief, the Department relied on U.S. Steel's fraudulent representations in denying NLMK's exclusion requests, finding that 10-inch slab was "produced in the United States in a sufficient and reasonably available amount and of a satisfactory quality."

60.     As a result, NLMK paid well in excess of $100 million dollars in tariffs on imports of 10-inch slab that would have been covered by the exclusions to which it was entitled and would have been granted but for U.S. Steel's misrepresentations.

61.     Because NLMK was unable to obtain 10-inch slabs in the United States, which it required to fill customer orders, NLMK was forced to continue to import this slab. Therefore, between August and November 2019, NLMK filed 51 requests for exclusion from quotas on imports of steel from Brazil.

62.     U.S. Steel objected to all 51 requests, bootstrapping the determination it had procured through the misrepresentations in its objections to NLMK's 2018 filings. The centerpiece of U.S. Steel's new objections was that: "Commerce already determined that [10-inch] slab is readily available in the requested quality and quantity from domestic producers."

63.     In addition, U.S. Steel represented that its thinner slabs were an adequate "substitute product" for 10-inch slabs. This was false, as U.S. Steel knew. NLMK requested 10-inch slabs because that was the feedstock it needed to make the products its customers demanded.

64.     Upon information and belief, based on U.S. Steel's misrepresentations, Commerce denied all 51 of NLMK's requests for exclusion from the Brazil quotas.

65.     On July 15, 2020, NLMK again requested to be excluded from the Section 232

tariffs, filing 26 requests, all for imports of 10-inch slabs.

66.     U.S. Steel once more fraudulently represented that it had "the available capacity to fulfill 100 percent of NLMK's slab requirements" which it was "willing to sell to NLMK at a fair market price."

67.     Upon information and belief, in October and November 2020 the Department again relied on U.S. Steel's misrepresentations in denying NLMK's requests, exposing NLMK to additional tariffs that it was not required to pay, and would not have paid but for U.S. Steel's baseless and misleading representations.

### 2.     U.S. Steel's False and Misleading Objections to NLMK's Exclusion Requests for 8-inch Slab

68.     In May 2018, U.S. Steel fraudulently objected to all 35 of NLMK's requests covering 8-inch slab, falsely representing that it could manufacture and supply "100% of the volume cited in NMLK's [sic] exclusion request[s]" and that it had "sufficient capacity to supply the product identified in the exclusion request."

69.     But U.S. Steel did not have sufficient excess capacity available to satisfy anywhere near 100% of the volume NLMK was requesting. U.S. Steel knew, based upon its discussions with NLMK, that it could not and would not provide NLMK with the slab feedstock it required.

70.     Nonetheless, U.S. Steel falsely represented to Commerce that it could provide 100% of the 8-inch slabs NLMK required. U.S. Steel could not and would not supply NLMK with more than a small fraction of the slab covered by its exclusion requests, let alone the total amount.

71.     During discussions with NLMK, U.S. Steel would not even commit to supplying slab to NLMK from its U.S. facilities.

72.     While U.S. Steel claimed that it could provide NLMK with *all* of the slab it needed from its U.S. facilities, U.S. Steel hid from Commerce that in negotiating a possible (albeit unsuccessful) deal to supply some 8-inch slab to NLMK, U.S. Steel would have to fill its obligation under any such agreement with U.S. Steel's own foreign imports.

73.     U.S. Steel told Commerce through its spate of over 450 objections that it could supply *36 million tons* of slab to its domestic competitors.

74.     However, U.S. Steel's total slab capacity—assuming it operated every active mill full time at full capacity—was only 15.7 million tons per year.  Since U.S. Steel had the capacity to hot-roll 15.3 million tons of its own finished product from those slabs, even if it were operating at 100% capacity, U.S. Steel would have, at most, had 400,000 tons to sell on the domestic market—approximately 1% of the total it represented to Commerce it would supply.

75.     U.S. Steel knew, but hid from Commerce, that it could not operate anywhere near 100% capacity.  Under ideal conditions, considering ordinary maintenance and labor limitations, a mill ordinarily operates at 80-85% capacity.  For U.S. Steel, these ideal conditions never existed.

76.     In the run-up to the enactment of the Section 232 tariffs in 2018, U.S. Steel's facilities were plagued by significant unplanned outages and production delays.  After years of deferring maintenance and making "band-aid" repairs to essential production equipment, in 2017 U.S. Steel embarked on what it called an "asset revitalization" program.  As part of this program, U.S. Steel planned substantial outages at its steelmaking facilities, further limiting its output capacity.  For example, for the 90-day period covering the third quarter of 2018 alone, U.S. Steel's Great Lakes facilities experienced more than *50 days* of outages.

77.     Predictably, these outages substantially diminished U.S. Steel's capacity to

produce slab.  In fact, in August 2018, during the company's Q2 2018 earnings call, U.S. Steel announced that it was necessary for U.S. Steel to import slab from its European facilities in order to offset a slab deficiency caused by the asset revitalization program.

78.     Thus, at the same time it was objecting to NLMK's exclusion requests in Q2 and Q3 2018, U.S. Steel had to import over 40,000 tons of steel from Europe to make up for a shortfall in slab necessary to produce its *own finished products*.

79.     Contrary to its representations to Commerce that it would and could provide the entirety of NLMK's slab requirements, U.S. Steel did not even have enough domestic slab to supply its own operations.  U.S. Steel's representations to Commerce objecting to NLMK's tariff exclusion requests were a web of lies.

80.     U.S. Steel intended to inflict undue harm on its competitors, including NLMK, to arrogate their market share for finished steel products to itself.

**D.     NLMK's Damages Resulting from U.S. Steel's Anticompetitive Abuse of the Tariff Exclusion Process**

81.     As a result of U.S. Steel's dishonest, unfair, and anticompetitive misconduct, NLMK paid nearly $200 million in tariffs on imported slabs it ordered to satisfy purchase orders, and will continue to pay substantial tariffs to import slab to make products that compete with U.S. Steel.  Because it has been subject to tariffs from which it should have been excluded, NLMK's costs have substantially increased, it has lost substantial returns which it otherwise would have realized on existing orders, and it has been forced to forego other orders.

82.     As a result of U.S. Steel's conduct, NLMK's costs have been artificially inflated, impeding its ability to compete for new business, including new opportunities arising from the recent steel market rally.  Due to these increased costs, NLMK has also been forced to shelve a planned capital investment of over $680 million to expand its existing facilities and increase its

capacity to compete in the market for downstream products, such as sheet and coil.

83.     Moreover, as a result of U.S. Steel's conduct, NLMK has been forced to cancel contracts with customers that it could no longer fulfill because those contracts depended on a reliable supply of slabs.

84.     As a result of the damage U.S. Steel caused to NLMK's business, NLMK has also been forced to idle approximately 550 steelworkers in Western Pennsylvania, in rolling lay-offs.

85.     These were the natural and intended consequences of U.S. Steel's false representations and objections to the Department of Commerce.

## COUNT I
### (Unfair Competition)

86.     Plaintiffs incorporate paragraphs 1-85 above by reference, as if restated in full herein.

87.     U.S. Steel knowingly and willfully misrepresented to the Department of Commerce its ability and willingness to produce and supply NLMK with steel slab in order to induce Commerce to deny all of NLMK's requests for exclusions from the Section 232 tariffs and thereby interfere with and impede the business relationships of NLMK, including its ability to compete with U.S. Steel in the sale of finished products.

88.     Contrary to the false information and misrepresentations it submitted to the Department of Commerce, U.S. Steel could not, and would not, provide NLMK with the steel slab that was the subject of NLMK's exclusion requests.

89.     Making false representations to induce the denial of NLMK's exclusion requests and to injure NLMK by interfering with its business relationships and impairing its ability to compete with U.S. Steel was contrary to honest, industrial, and commercial practices.

90.     As a result of U.S. Steel's dishonest and unfair behavior, NLMK was wrongly

16

forced to pay substantial tariffs from which it was entitled to exclusions, which negatively impacted NLMK's ability to compete with U.S. Steel, interfered with NLMK's business relationships and caused NLMK to sustain significant disruption and harm to its business, including lost profits, lost contracts, and lost investment opportunities.

WHEREFORE, Plaintiffs NLMK Pennsylvania, LLC and NLMK Indiana, LLC respectfully request an award of: (i) compensatory damages to NLMK in an amount to be determined at trial, but not less than $100 million; (ii) punitive damages in an amount to be determined at trial; (iii) pre-judgment interest at the legally applicable rate; (iv) attorneys' fees and costs; and (v) such other and further relief as may be just and proper.

Respectfully submitted:

By: /s/ Sanford Litvack WPII

Sanford Litvack, Esq.
(*pro hac vice* to be presented)
Andrew L. Poplinger, Esq.
(*pro hac vice* to be presented)
R. Matthew Burke, Esq.
(*pro hac vice* to be presented)

CHAFFETZ LINDSEY LLP

1700 Broadway, 33rd Floor
New York, NY 10019
Tel. (212) 257-6960
Fax. (212) 257-6950

By: _____

William Pietragallo, II, Esq.
PA I.D No. 16413

PIETRAGALLO GORDON ALFANO
BOSICK & RASPANTI, LLP
Firm #834

One Oxford Centre, 38th Floor
Pittsburgh, PA 15219
Tel. (412) 263-2000
Fax. (412) 263-2001

Dated:  January 22, 2021

18

## VERIFICATION

I, _Robert D Miller_, having read the within Complaint, verify that the statements contained therein are true and correct to the best of my knowledge, information and belief, and are made subject to the penalties of 18 Pa. Cons. Stat. Ann. § 4904 relating to unsworn falsification to authorities.

_____
Signature

_____
Title

19

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

Submitted by: William Pietragallo, II, Esq.

Signature: _____

Attorney No. (if applicable): 16413

# Exhibit 1.B

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | |
|---|---|
| NLMK PENNSYLVANIA, LLC and<br>NLMK INDIANA, LLC, | CIVIL DIVISION |
| Plaintiffs | No. GD-21-000719 |
| | Code No. 009 |
| vs. | |
| UNITED STATES STEEL CORPORATION, | **MOTION TO ASSIGN CASE TO THE<br>COMMERCE AND COMPLEX<br>LITIGATION CENTER** |
| Defendant. | |

Filed on behalf of Plaintiffs

Counsel of record for Plaintiffs:

William Pietragallo, II, Esq.
PA I.D. No. 16413

Pietragallo Gordon Alfano Bosick &
Raspanti, LLP
Firm I.D. No. 834
The Thirty-Eighth Floor
One Oxford Centre
Pittsburgh, PA  15219
(412) 263-2000
(412) 263-2001 (Fax)

Sanford Litvack, Esq.
*Pro hac vice* to be presented

Andrew L. Poplinger, Esq.
*Pro hac vice* to be presented

R. Matthew Burke, Esq.
*Pro hac vice* to be presented

Chaffetz Lindsey LLP
1700 Broadway, 33rd Floor
New York, NY  10019
(212) 257-6960
(212) 257-6950 (Fax)

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

NLMK PENNSYLVANIA, LLC and
NLMK INDIANA, LLC,

                    Plaintiffs

            vs.

UNITED STATES STEEL CORPORATION,

                  Defendant.

CIVIL DIVISION

No. GD-21-000719

### **NOTICE OF PRESENTATION**

TO:    United States Steel Corporation
        600 Grant Street
        Pittsburgh, PA  15219

        Please take notice that the within Motion to Assign Case to the Commerce and Complex

Litigation Center will be presented to the Honorable Christine A. Ward, Courtroom _____, City-

County Building, Pittsburgh, PA 15219, on _____, 2021, at _____

____.m. or as soon thereafter as suits the convenience of the Court.

                                      PIETRAGALLO GORDON ALFANO
                                      BOSICK & RASPANTI, LLP

                                      _____
                                      William Pietragallo, II, Esq.

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | |
|---|---|
| NLMK PENNSYLVANIA, LLC and NLMK INDIANA, LLC, | CIVIL DIVISION |
| Plaintiffs | No. GD-21-000719 |
| vs. | |
| UNITED STATES STEEL CORPORATION, | |
| Defendant. | |

## MOTION TO ASSIGN CASE TO THE
## COMMERCE AND COMPLEX LITIGATION CENTER

AND NOW come the Plaintiffs, NLMK Pennsylvania, LLC and NLMK Indiana, LLC (collectively "NLMK"), by and through their attorneys, Pietragallo Gordon Alfano Bosick & Raspanti, LLP and Chaffetz Lindsey LLP, and submit the following Motion to Assign Case to the Commerce and Complex Litigation Center.

1.    In this action, NLMK seeks damages caused by the Defendant, United States Steel Corporation, for anticompetitive, unfair and unlawful trade practices.  A copy of the Complaint in this matter is attached as Exhibit "A".

2.    The claim for damages is in excess of One Hundred Million Dollars ($100,000,000).

3.    According to the description of the docket and procedures of the Commerce and Complex Litigation Center, this case qualifies for assignment to the Commerce and Complex Litigation Center under Section A.2.(b).  Specifically, the Complaint alleges fraud, misrepresentation, business torts and restraint of trade all in support of its claim of Unfair Competition.

4.    The factual and legal predicate of this case renders it appropriate for assignment to the Commerce and Complex Litigation Center.

WHEREFORE, Plaintiffs, NLMK Pennsylvania, LLC, and NLMK Indiana, LLC, respectfully request that this Honorable Court grant the foregoing Motion to Assign Case to the Commerce and Complex Litigation Center.

Respectfully submitted,

CHAFFETZ LINDSEY LLP

PIETRAGALLO GORDON ALFANO
BOSICK & RASPANTI, LLP

Sanford Litvack, Esq.
*Pro hac vice* to be presented
Andrew L. Poplinger, Esq.
*Pro hac vice* to be presented
R. Matthew Burke, Esq.
*Pro hac vice* to be presented
1700 Broadway, 33rd Floor
New York, NY 10019
(212) 257-6960
(212) 257-6950 (Fax)

William Pietragallo, II, Esq.
The Thirty-Eighth Floor
One Oxford Centre
Pittsburgh, PA 15219
(412) 263-2000
(412) 263-2001 (Fax)

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

|  |  |
|---|---|
| | **CIVIL DIVISION** |
| NLMK PENNSYLVANIA, LLC and<br>NLMK INDIANA, LLC, | No. GD-21- 000 719 |
| Plaintiffs, | **COMPLAINT** |
| | File on behalf of PLAINTIFFS |
| v. | Counsel of record for Plaintiffs: |
| UNITED STATES STEEL CORPORATION, | WILLIAM PIETRAGALLO, II, ESQ.<br>PA I.D. No. 16413 |
| Defendant. | Pietragallo Gordon Alfano Bosick &<br>Raspanti, LLP<br>Firm I.D. No. 834<br>The Thirty-Eight Floor<br>One Oxford Centre<br>Pittsburgh, PA 15219<br>(412) 263-2000<br>(412) 263-2001 (Fax) |
| | SANFORD LITVACK, ESQ.<br>*Pro hac vice* to be presented |
| | ANDREW L. POPLINGER, ESQ.<br>*Pro hac vice* to be presented |
| | R. MATTHEW BURKE, ESQ.<br>*Pro hac vice* to be presented |
| | Chaffetz Lindsey LLP<br>The Thirty-Third Floor<br>New York, NY 10019<br>(212) 257-6960<br>(212) 257-6950 (Fax) |
| | **JURY TRIAL DEMANDED** |

FILED
2021 JAN 22 PM 3:04

**EXHIBIT "A"**

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

CIVIL DIVISION

NLMK INDIANA, LLC and
NLMK PENNSYLVANIA, LLC,

No. GD-21-

             Plaintiffs,

**JURY TRIAL DEMANDED**

   v.

UNITED STATES STEEL CORPORATION,

            Defendant.

## <u>NOTICE TO DEFEND</u>

YOU HAVE BEEN SUED IN COURT. If you wish to defend against the claims set forth in the following pages, you must take action within TWENTY (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

LAWYER REFERRAL SERVICE
The Allegheny County Bar Association
11th Floor Koppers Building, 436 Seventh Avenue
Pittsburgh, Pennsylvania 15219
Telephone: 412-261-5555
www.acbalrs.org

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

CIVIL DIVISION

NLMK PENNSYLVANIA, LLC and
NLMK INDIANA, LLC,

No. GD-21-

    Plaintiffs,    **JURY TRIAL DEMANDED**

  v.

UNITED STATES STEEL CORPORATION,

    Defendant.

## COMPLAINT

NOW COME Plaintiffs NLMK Pennsylvania, LLC and NLMK Indiana, LLC, (collectively, "Plaintiffs" or "NLMK"), and complain of Defendant United States Steel Corporation as follows:

## THE PARTIES

1. Plaintiff, NLMK Pennsylvania, LLC, is a limited liability company organized under the laws of the State of Delaware, with its principal place of business at 15 Roemer Boulevard, Farrell, Pennsylvania, 16121.

2. Plaintiff, NLMK Indiana, LLC, is a limited liability company organized under the laws of the State of Indiana, with its principal place of business at 6500 S. Boundary Road, Portage, Indiana, 56368.

3. NLMK, a leading U.S. steel company, owns and operates steel mills in Farrell and Sharon in Pennsylvania, and Portage, Indiana.  NLMK imports semi-finished steel slab to its

U.S. mills, rolls the slab into finished steel products, such as high quality steel sheet and coil, and sells them to a wide range of industries throughout the United States. To date, NLMK has invested more than $800 million in these facilities, restoring much-needed jobs to the local and regional communities. Among these mills, NLMK directly employs over 1,100 workers and generates another 8,400 jobs, indirectly.

4.       United States Steel Corporation ("U.S. Steel" or "Defendant") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 600 Grant Street, Pittsburgh, Pennsylvania, 15219. U.S. Steel is a fully integrated steel producer with operations in the United States, Canada, and Europe, where it manufactures semi-finished steel slab that it uses to produce finished steel products, which it sells to customers in direct competition with NLMK.

## JURISDICTION AND VENUE

5.       This Court has subject matter jurisdiction because it has "unlimited original jurisdiction of all actions and proceedings, including all actions and proceedings heretofore cognizable by law or usage in the courts of common pleas," and no statute or rule vests jurisdiction in another court. 42 Pa.C.S. § 931(a); Pa. Const. Art. V, § 5(b).

6.       This Court has personal jurisdiction pursuant to 42 Pa.C.S. §§ 5301(a)(2) and 5301(b) because U.S. Steel carries out a continuous and systematic part of its general business in Pennsylvania and because it is qualified as a foreign corporation under the laws of Pennsylvania.

7.       Venue is proper in this Court pursuant to Pa. R. Civ. P. 2179(a) because U.S. Steel has its principal place of business and regularly conducts business in Allegheny County.

## NATURE OF THE ACTION

8.       NLMK brings this action to recover the substantial damages caused by U.S.

Steel's anticompetitive, unfair, and unlawful trade practices, which have inflicted in excess of

$100 million in damages on NLMK.  In particular, U.S. Steel successfully engaged in a pattern

of misrepresentation and deception in order to induce the United States Department of

Commerce (the "Department" or "Commerce") to deny NLMK tariff relief to which it was

entitled, all for the purpose of placing NLMK at a competitive disadvantage.

9.       In March 2018, former President Trump, acting pursuant to Section 232 of the

Trade Expansion Act of 1962 (19 U.S.C. § 1862, as amended), issued a Proclamation imposing a

tariff of 25% on all steel imports (with certain exceptions not relevant here).  U.S. Steel had

lobbied the administration to impose the tariffs, hoping that they would hobble competitors, such

as NLMK, that rely on imported steel slab necessary to manufacture competing products.

Saddling NLMK and other U.S. Steel competitors with tariffs would increase Defendant's

competitors' costs and impede their ability to compete with Defendant.

10.      However, U.S. Steel's lobbying efforts fell short.  While the President imposed

the tariffs, the operative Proclamation did not guarantee that tariffs would be imposed on all steel

imports.  Instead, the Proclamation recognized that the tariffs could have potentially devastating

consequences for U.S. businesses, such as NLMK, that rely on imports of steel products that they

cannot obtain in the domestic market.  The Proclamation therefore directed the Department of

Commerce to grant U.S. businesses tariff exclusions for imported steel products that are not

available in sufficient quality or quantity in the United States.

11.      Pursuant to the Proclamation, the Department established a process whereby

affected companies could file requests to exclude particular imports from the tariffs.  Other

3

domestic steel companies could object to a request *if* the objector demonstrated that it could and would supply the requestor with the particular product in the amount it required and within eight weeks. This case arises from U.S. Steel's efforts to unfairly compete with NLMK by brazenly abusing this process.

12.     NLMK and U.S. Steel are direct competitors who both serve customers in the market for pipe and tube, service center, yellow goods, agricultural, construction, and coated conversion products.

13.     Between 2018 and the present, NLMK submitted 162 requests for exclusions from the Section 232 tariffs for semi-finished steel slab, which it must have to make its finished products. The majority of NLMK's requests covered various "10-inch slab." The remainder of NLMK's requests covered various "8-inch slab."

14.     U.S. Steel could not and would not supply NLMK with the slab it needed, and therefore lacked any legitimate basis to object to NLMK's requests. Nonetheless, it did.

15.     U.S. Steel objected not only to NLMK's requests, but to more than 450 exclusion requests covering steel slab. In doing so, U.S. Steel expressly committed to producing and being willing to provide over 36 million tons of steel slab to its competitors. However, even if U.S. Steel had the ability to make all the specific grades and dimensions of slab the requesters required (and it did not), and even if it devoted the entirety of its domestic production capacity solely to making steel slab for sale to its competitors, U.S. Steel could not supply the quantity of slab it told the Department that it would provide to its competitors.

16.     In its objections to NLMK's requests, U.S. Steel specifically represented to the Department that it could produce "the entire spectrum of grades and dimensions of steel slabs identified in NLMK's requests and has significant excess production capacity and is able to meet

4

100% of the volume cited" in NLMK's exclusion requests.  This was simply not true.

17.     Although it represented it could supply NLMK with the 10-inch slab NLMK required, U.S. Steel did not then have and does not now have a single domestic facility capable of making any 10-inch slab, which represented the overwhelming majority of NLMK's slab requirements.  U.S. Steel's objections to all of NLMK's requests for exclusion for 10-inch slabs were totally baseless.

18.     With respect to 8-inch slab, at the time of its objections in 2018, U.S. Steel would not sell or offer to sell anything but small amounts of slab feedstock on a spot basis to NLMK.  Indeed, in the period leading up to NLMK's 2018 exclusion requests, NLMK made nearly 50 attempts to obtain slab from U.S. Steel, but was only able to acquire a small fraction of its monthly requirements.  Nevertheless, U.S. Steel objected to all of NLMK's requests for exclusions concerning 8-inch slabs, representing that it could and would supply NLMK with all the slab it required.  That representation was false.

19.     Upon information and belief, based on U.S. Steel's misrepresentations, Commerce wrongly denied all 162 of NLMK's exclusion requests.[1]

20.     NLMK has thus been forced to pay nearly $200 million in tariffs from which it should have and would have been exempt, but for U.S. Steel's dishonest and anticompetitive misrepresentations.  U.S. Steel's submission of false representations to support its objections were intended to, and in fact did, inflict significant competitive harm on NLMK, in violation of Pennsylvania law.

---

[1] NLMK sued United States in the Court of International Trade for its wrongful denials.  That litigation has been settled.

### FACTUAL BACKGROUND

**A.   NLMK's Business**

21.     NLMK's mills supply high-quality steel sheet and coil to the construction, automotive, pipe and tube, and heavy equipment industries.  More than 250 businesses in 30 states depend on NLMK's products.

22.     NLMK's Pennsylvania facility makes the finished products it sells from slab feedstock acquired elsewhere, usually imported.

23.     NLMK has limited capacity to produce 8-inch slab in Indiana for use at that facility, but needs to acquire additional feedstock elsewhere, usually imported.

24.     Competition among producers of finished steel products is fierce.  Small differences in price can make the difference between losing and winning business.  Lost business for one company is generally a ton-for-ton gain for a competitor.

25.     One of NLMK's biggest competitors is U.S. Steel.  Like NLMK, U.S. Steel sells its finished products, such as steel coil, in the U.S. market.

26.     U.S. Steel is an integrated producer, capable of producing the steel slab it needs to feed its own rolling operations to manufacture finished products.  U.S. Steel uses virtually all the steel slab it produces for its own operations.

27.     It is more profitable for integrated producers such as U.S. Steel to use the slabs they produce to manufacture and sell their downstream finished products than to sell their slab feedstock.  Accordingly, U.S. Steel, and others, have no incentive to divert their limited feedstock to competitors for their use in making competing finished products.

28.     Although NLMK purchases as much steel slab as it can in the U.S. market, given the market realities, the volume available has always been limited.  NLMK has therefore had to

import steel slab feedstock to support its production of finished products.

29.     To fill a majority of its customers' orders, NLMK requires slabs that are 250-255 mm thick, nominally referred to as "10-inch slab." NLMK, however, cannot source any of this 10-inch slab domestically because there is only one domestic producer with a mill capable of making 10-inch slab, which is ArcelorMittal. That producer, ArcelorMittal, consumes all of its slab for its own operations, and did not object to any of NLMK's requests; it sought its own exclusions for slabs it imports from its plant in Mexico.

30.     For its operations in Indiana and a small portion of its Pennsylvania operations, NLMK uses thinner slab that is nominally "8-inch slab."

31.     In the two-year period between 2016 and 2018, when the Section 232 tariffs went into effect, NLMK made more than 50 attempts to purchase slab from U.S. Steel.

32.     Notwithstanding its efforts, NLMK was able to obtain only a fraction of the feedstock it needed to supply its mills—and even then, only intermittently on the spot market.

**B.     NLMK's Requests for Exclusion from Section 232 Tariffs**

33.     Because the slabs NLMK requires to compete with U.S. Steel were not available in the U.S. market, NLMK applied for and was entitled to exemptions from the tariffs on these products. In total, NLMK filed more than 160 requests for exclusion from the Section 232 tariffs.

34.     NLMK's filings included 111 requests with respect to slab imports from Russia and 51 requests for exclusion for imports of Brazilian slab.

35.     With respect to Brazil, steel imports were exempt from the Section 232 tariffs, but were subject to a strict quota. However, as with respect to the tariffs, if a requester could not procure sufficient amounts of a particular product in the United States, it was entitled to an

exclusion from the quota.

36.     U.S. Steel objected to every one of NLMK's requests covering steel slab from both Russia and Brazil.

37.     NLMK filed its first requests in April 2018, when it submitted 85 requests for exclusion from the Section 232 tariffs for slabs imported from Russia.  Of these 85 requests, 50 covered 10-inch slabs.  The remaining 35 requests covered 8-inch slabs.  U.S. Steel filed objections to all 85 requests, and all 85 requests were denied.

38.     Between August and November 2019, following the denial of its original 85 exclusion requests, NLMK filed 51 requests for exclusions from the quotas imposed on imports of steel from Brazil, all covering 10-inch slabs.  Again, U.S. Steel objected, this time relying on the prior 2018 denials.

39.     Between June and August 2020, Commerce denied these requests.  Upon information and belief, the Department relied upon U.S. Steel's objections in denying the requests.

40.     In July 2020, NLMK filed 26 additional requests for exclusion from the tariffs for 10-inch slabs from Russia.  For a third time, U.S. Steel objected, referring back to the prior denials.  In October and November 2020, Commerce again denied NLMK's requests.

41.     U.S. Steel made false representations, which were intended to, and did, bring about the wrongful denial of all of NLMK's requests and impose competitive harm on NLMK.

42.     Upon information and belief, in addition to its misrepresentations in its formal submissions to Commerce, U.S. Steel also engaged in a series of *ex parte* communications with the Department while NLMK's requests were pending.  *See* Management Alert: Certain Communications by Department Officials Suggest Improper Influence in the Section 232

8

Exclusion Request Review Process, Final Memorandum No. OIG-20-003-M (Oct. 28, 2019), at 3, *available at* https://www.oig.doc.gov/OIGPublications/OIG-20-003-M.pdf.

43.    Upon information and belief, U.S. Steel made additional misrepresentations to the Department during these *ex parte* meetings regarding its ability, capacity, and willingness to supply NLMK with steel slab and its dealings with NLMK.

44.    Upon information and belief, U.S. Steel's objections and representations were accepted as true by the Department, which did not conduct any independent investigation to verify U.S. Steel's representations, including whether it would fulfill the quantity of slab it stated it was able to provide. *See* U.S. Gov't Accountability Office, GAO-20-517, Steel and Aluminum Tariffs:  Commerce Should Improve Its Exclusion Request Process and Economic Impact Reviews (2020), at 18, *available at* https://www.gao.gov/assets/710/709387.pdf.

**C.    U.S. Steel's Anticompetitive Abuse of the Tariff Exclusion Process**

45.    U.S. Steel lobbied for the Section 232 tariffs, believing the tariffs it sought would hamper its competitors who relied on imported manufacturing inputs, such as slab.  But the President's inclusion of the exclusion process severely limited the tariffs' utility to U.S. Steel as a means of gaining on its domestic competitors like NLMK.

46.    Upon information and belief, having failed to obtain the tariff regime it wanted, U.S. Steel hatched a scheme to prevent its competitors from obtaining the tariff exemptions to which they were plainly entitled.  By misleading the Department into denying exclusions to its competitors, including NLMK, U.S. Steel could force NLMK to pay unwarranted tariffs, thereby driving up NLMK's costs, unfairly limiting its ability to (a) participate in the market, (b) meet contractual obligations to certain of its customers, (c) maintain sales volume; (d) compete with U.S. Steel on price; and (e) make substantial investments to increase its capacity to further compete with U.S. Steel.

9

47.     U.S. Steel objected to more than 450 exclusion requests for steel slab in just the first year of the Section 232 exclusion process, covering 36 million tons of steel slab. It did so despite knowing that it could not and would not provide this amount of slab to its competitors.

48.     U.S. Steel's plan was never to sell the large volumes of slab covered by the 450 exclusion requests. Its intention was to gain a competitive edge by systematically and unfairly exploiting the Section 232 process to drive up its competitors' costs.

49.     U.S. Steel lacked any genuine and legitimate basis to object to any, let alone all, of NLMK's 162 exclusion requests between 2018 and 2020. Nevertheless, it submitted false and misleading objections to the Department, misrepresenting its capacity and intent to provide slabs to NLMK, thereby bringing about the wrongful denial of the tariff exclusions NLMK requested and imposing significant financial harm on its competitor.

        **1.**        **U.S. Steel's False and Misleading Objections to NLMK's Exclusion Requests for 10-inch Slab**

50.     In May and August 2018, U.S. Steel objected to all 50 of NLMK's exclusion requests covering 10-inch slabs. As part of its objections, U.S. Steel represented that it was capable of providing NLMK with all of the 10-inch slab it needed, knowing that it did not have a single slab caster in the U.S. capable of making these slabs.

51.     Specifically, in each of its 50 objections U.S. Steel:

- Answered "Yes" to the question: "Is the steel product type identified in the Exclusion Request currently manufactured by your organization in the United States, or can it immediately be made (within 8 weeks) by your organization, in a company-owned plant in the United States?" The truthful answer was "No."

- Answered "100%" to the question: "What percentage of total steel product tonnage requirement covered under the Exclusion Request that is the subject of this Objection Filing can your organization manufacture at its U.S. plants on a

timely basis?"  The truthful answer was "0%."

52.    In its supplemental written narrative submitted to the Department with each of its objections, U.S. Steel made additional false representations, including that:

- U.S. Steel had "sufficient capacity available to satisfy the customer order underlying the exclusion request[s]" for 10-inch slabs.

- 10-inch slabs were "standard products that U.S. Steel is capable of making."

- U.S. Steel produced "the entire spectrum of grades and dimensions of steel slabs identified in NLMK's requests and has significant excess production capacity and is able to meet 100% of the volume cited in NMLK's [sic] exclusion request."

53.    Each of those statements was knowingly false and was designed to harm NLMK and injure competition by causing Commerce to deny the exclusions.

54.    U.S. Steel made further misrepresentations in October 2018 when it submitted its sur-rebuttals.  These sur-rebuttals were, as U.S. Steel knew, the last word in the Section 232 exclusion process.

55.    With free reign, U.S. Steel told Commerce that it could make an *"identical product"* to the 10-inch slab that was the subject of NLMK's exclusion requests.

56.    U.S. Steel also represented that it had had "multiple exchanges and proposals . . . [with] NLMK throughout 2018" concerning sourcing 10-inch slabs, which could be evidenced by "actual production orders consummated, and the ongoing contract discussions for 2019."

57.    Each of those representations to Commerce was false.  U.S. Steel did not then or now have a single operating mill in the United States capable of producing 10-inch slab.  It had not then and has not since sold 10-inch slab to NLMK or anyone else.

58.    U.S. Steel made these fraudulent statements to interfere with NLMK's business

11

and impede NLMK from effectively competing with U.S. Steel in the market.

59.     Upon information and belief, the Department relied on U.S. Steel's fraudulent representations in denying NLMK's exclusion requests, finding that 10-inch slab was "produced in the United States in a sufficient and reasonably available amount and of a satisfactory quality."

60.     As a result, NLMK paid well in excess of $100 million dollars in tariffs on imports of 10-inch slab that would have been covered by the exclusions to which it was entitled and would have been granted but for U.S. Steel's misrepresentations.

61.     Because NLMK was unable to obtain 10-inch slabs in the United States, which it required to fill customer orders, NLMK was forced to continue to import this slab. Therefore, between August and November 2019, NLMK filed 51 requests for exclusion from quotas on imports of steel from Brazil.

62.     U.S. Steel objected to all 51 requests, bootstrapping the determination it had procured through the misrepresentations in its objections to NLMK's 2018 filings. The centerpiece of U.S. Steel's new objections was that: "Commerce already determined that [10-inch] slab is readily available in the requested quality and quantity from domestic producers."

63.     In addition, U.S. Steel represented that its thinner slabs were an adequate "substitute product" for 10-inch slabs. This was false, as U.S. Steel knew. NLMK requested 10-inch slabs because that was the feedstock it needed to make the products its customers demanded.

64.     Upon information and belief, based on U.S. Steel's misrepresentations, Commerce denied all 51 of NLMK's requests for exclusion from the Brazil quotas.

65.     On July 15, 2020, NLMK again requested to be excluded from the Section 232

tariffs, filing 26 requests, all for imports of 10-inch slabs.

66.     U.S. Steel once more fraudulently represented that it had "the available capacity to fulfill 100 percent of NLMK's slab requirements" which it was "willing to sell to NLMK at a fair market price."

67.     Upon information and belief, in October and November 2020 the Department again relied on U.S. Steel's misrepresentations in denying NLMK's requests, exposing NLMK to additional tariffs that it was not required to pay, and would not have paid but for U.S. Steel's baseless and misleading representations.

### 2.     U.S. Steel's False and Misleading Objections to NLMK's Exclusion Requests for 8-inch Slab

68.     In May 2018, U.S. Steel fraudulently objected to all 35 of NLMK's requests covering 8-inch slab, falsely representing that it could manufacture and supply "100% of the volume cited in NMLK's [sic] exclusion request[s]" and that it had "sufficient capacity to supply the product identified in the exclusion request."

69.     But U.S. Steel did not have sufficient excess capacity available to satisfy anywhere near 100% of the volume NLMK was requesting. U.S. Steel knew, based upon its discussions with NLMK, that it could not and would not provide NLMK with the slab feedstock it required.

70.     Nonetheless, U.S. Steel falsely represented to Commerce that it could provide 100% of the 8-inch slabs NLMK required. U.S. Steel could not and would not supply NLMK with more than a small fraction of the slab covered by its exclusion requests, let alone the total amount.

71.     During discussions with NLMK, U.S. Steel would not even commit to supplying slab to NLMK from its U.S. facilities.

72.     While U.S. Steel claimed that it could provide NLMK with *all* of the slab it needed from its U.S. facilities, U.S. Steel hid from Commerce that in negotiating a possible (albeit unsuccessful) deal to supply some 8-inch slab to NLMK, U.S. Steel would have to fill its obligation under any such agreement with U.S. Steel's own foreign imports.

73.     U.S. Steel told Commerce through its spate of over 450 objections that it could supply *36 million tons* of slab to its domestic competitors.

74.     However, U.S. Steel's total slab capacity—assuming it operated every active mill full time at full capacity—was only 15.7 million tons per year.  Since U.S. Steel had the capacity to hot-roll 15.3 million tons of its own finished product from those slabs, even if it were operating at 100% capacity, U.S. Steel would have, at most, had 400,000 tons to sell on the domestic market—approximately 1% of the total it represented to Commerce it would supply.

75.     U.S. Steel knew, but hid from Commerce, that it could not operate anywhere near 100% capacity.  Under ideal conditions, considering ordinary maintenance and labor limitations, a mill ordinarily operates at 80-85% capacity.  For U.S. Steel, these ideal conditions never existed.

76.     In the run-up to the enactment of the Section 232 tariffs in 2018, U.S. Steel's facilities were plagued by significant unplanned outages and production delays.  After years of deferring maintenance and making "band-aid" repairs to essential production equipment, in 2017 U.S. Steel embarked on what it called an "asset revitalization" program.  As part of this program, U.S. Steel planned substantial outages at its steelmaking facilities, further limiting its output capacity.  For example, for the 90-day period covering the third quarter of 2018 alone, U.S. Steel's Great Lakes facilities experienced more than *50 days* of outages.

77.     Predictably, these outages substantially diminished U.S. Steel's capacity to

produce slab. In fact, in August 2018, during the company's Q2 2018 earnings call, U.S. Steel announced that it was necessary for U.S. Steel to import slab from its European facilities in order to offset a slab deficiency caused by the asset revitalization program.

78.     Thus, at the same time it was objecting to NLMK's exclusion requests in Q2 and Q3 2018, U.S. Steel had to import over 40,000 tons of steel from Europe to make up for a shortfall in slab necessary to produce its *own finished products*.

79.     Contrary to its representations to Commerce that it would and could provide the entirety of NLMK's slab requirements, U.S. Steel did not even have enough domestic slab to supply its own operations. U.S. Steel's representations to Commerce objecting to NLMK's tariff exclusion requests were a web of lies.

80.     U.S. Steel intended to inflict undue harm on its competitors, including NLMK, to arrogate their market share for finished steel products to itself.

**D.      NLMK's Damages Resulting from U.S. Steel's Anticompetitive Abuse of the Tariff Exclusion Process**

81.     As a result of U.S. Steel's dishonest, unfair, and anticompetitive misconduct, NLMK paid nearly $200 million in tariffs on imported slabs it ordered to satisfy purchase orders, and will continue to pay substantial tariffs to import slab to make products that compete with U.S. Steel. Because it has been subject to tariffs from which it should have been excluded, NLMK's costs have substantially increased, it has lost substantial returns which it otherwise would have realized on existing orders, and it has been forced to forego other orders.

82.     As a result of U.S. Steel's conduct, NLMK's costs have been artificially inflated, impeding its ability to compete for new business, including new opportunities arising from the recent steel market rally. Due to these increased costs, NLMK has also been forced to shelve a planned capital investment of over $680 million to expand its existing facilities and increase its

capacity to compete in the market for downstream products, such as sheet and coil.

83.    Moreover, as a result of U.S. Steel's conduct, NLMK has been forced to cancel contracts with customers that it could no longer fulfill because those contracts depended on a reliable supply of slabs.

84.    As a result of the damage U.S. Steel caused to NLMK's business, NLMK has also been forced to idle approximately 550 steelworkers in Western Pennsylvania, in rolling lay-offs.

85.    These were the natural and intended consequences of U.S. Steel's false representations and objections to the Department of Commerce.

## COUNT I
### (Unfair Competition)

86.    Plaintiffs incorporate paragraphs 1-85 above by reference, as if restated in full herein.

87.    U.S. Steel knowingly and willfully misrepresented to the Department of Commerce its ability and willingness to produce and supply NLMK with steel slab in order to induce Commerce to deny all of NLMK's requests for exclusions from the Section 232 tariffs and thereby interfere with and impede the business relationships of NLMK, including its ability to compete with U.S. Steel in the sale of finished products.

88.    Contrary to the false information and misrepresentations it submitted to the Department of Commerce, U.S. Steel could not, and would not, provide NLMK with the steel slab that was the subject of NLMK's exclusion requests.

89.    Making false representations to induce the denial of NLMK's exclusion requests and to injure NLMK by interfering with its business relationships and impairing its ability to compete with U.S. Steel was contrary to honest, industrial, and commercial practices.

90.    As a result of U.S. Steel's dishonest and unfair behavior, NLMK was wrongly

forced to pay substantial tariffs from which it was entitled to exclusions, which negatively impacted NLMK's ability to compete with U.S. Steel, interfered with NLMK's business relationships and caused NLMK to sustain significant disruption and harm to its business, including lost profits, lost contracts, and lost investment opportunities.

WHEREFORE, Plaintiffs NLMK Pennsylvania, LLC and NLMK Indiana, LLC respectfully request an award of: (i) compensatory damages to NLMK in an amount to be determined at trial, but not less than $100 million; (ii) punitive damages in an amount to be determined at trial; (iii) pre-judgment interest at the legally applicable rate; (iv) attorneys' fees and costs; and (v) such other and further relief as may be just and proper.

Respectfully submitted:

By: /s/ Sanford Litvack
    Sanford Litvack, Esq.
    (*pro hac vice* to be presented)
    Andrew L. Poplinger, Esq.
    (*pro hac vice* to be presented)
    R. Matthew Burke, Esq.
    (*pro hac vice* to be presented)

    CHAFFETZ LINDSEY LLP

    1700 Broadway, 33rd Floor
    New York, NY 10019
    Tel. (212) 257-6960
    Fax. (212) 257-6950

By: William Pietragallo, II
    William Pietragallo, II, Esq.
    PA I.D No. 16413

    PIETRAGALLO GORDON ALFANO
    BOSICK & RASPANTI, LLP
    Firm #834

    One Oxford Centre, 38th Floor
    Pittsburgh, PA 15219
    Tel. (412) 263-2000
    Fax. (412) 263-2001

Dated:  January 22, 2021

## VERIFICATION

I, _Robert D Miller_, having read the within Complaint, verify that the statements contained therein are true and correct to the best of my knowledge, information and belief, and are made subject to the penalties of 18 Pa. Cons. Stat. Ann. § 4904 relating to unsworn falsification to authorities.

_____
Signature

_Presdent & CEO_
Title

19

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania:  Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

Submitted by: William Pietragallo, II, Esq.

Signature: _____

Attorney No. (if applicable):  16413

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document has been served by

electronic mail this 9th day of February 2021, upon all counsel of record, addressed as follows:


Andy Stanton, Esq.
Jones Day
500 Grant Street, Suite 4500
Pittsburgh, PA  15219
astanton@jonesday.com

*Counsel for Defendant, United States Steel Corporation*



PIETRAGALLO GORDON ALFANO
BOSICK & RASPANTI, LLP


William Pietragallo, II, Esq.