## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

NLMK PENNSYLVANIA, LLC, and
NLMK INDIANA, LLC,

        *Plaintiffs*,

    v.

UNITED STATES STEEL CORPORATION,

        *Defendant*.

Case No. 2:21-cv-00273-WSS

Hon. William S. Stickman

Electronically Filed

## UNITED STATES STEEL CORPORATION'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

Leon F. DeJulius, Jr. (Pa. #90383)
Kelly C. Holt (Mass. #703505)*
JONES DAY
250 Vesey Street
New York, NY 10281
Tel: (212) 326-3939
Fax: (212) 755-7306
lfdejulius@jonesday.com
kholt@jonesday.com
*Admitted pro hac vice*

Andrew R. Stanton (Pa. #93409)
Roy Powell (Pa. #37487)
Tarek Abdalla (Pa. #59924)
Simone DeJarnett (Pa. #321045)
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, PA 15219
Tel: (412) 391-3939
Fax: (412) 394-7959
astanton@jonesday.com
rapowell@jonesday.com
tabdalla@jonesday.com
sdejarnett@jonesday.com

*Counsel for Defendant U. S. Steel*

# TABLE OF CONTENTS

**Page**

STANDARD OF REVIEW ................................................................................ 3

ARGUMENT .................................................................................................. 3

I.      U. S. Steel Properly Removed This Case Under *Grable* ................................ 3

        A.      This Case Turns On Substantial Questions Regarding The Validity,
                Construction, And Effect Of Federal Law ............................................ 4

        B.      Accepting Federal Jurisdiction In This Case Would Not Upset The
                Federal-State Balance ...................................................................... 10

II.     Federal Jurisdiction Is Proper Because NLMK's Claim Is Completely Preempted ........ 11

        A.      Plaintiffs Had A Federal Cause Of Action To Vindicate Their Interest In
                Tariff Exclusions ............................................................................ 12

        B.      The Federal Cause Of Action Is Exclusive ........................................ 14

III.    Because U. S. Steel Acted Under Commerce In Submitting Section 232
        Objections, Removal Is Proper Under 28 U.S.C. § 1442(a)(1) ...................... 16

CONCLUSION .............................................................................................. 20

# TABLE OF AUTHORITIES

**Page**

CASES

*Aetna Health Inc. v. Davila*,
    542 U.S. 200 (2004) ................................................................................2, 13

*Allergan, Inc. v. Ferrum Ferro Cap., LLC*,
    2015 WL 12670417 (C.D. Cal. Dec. 28, 2015) ........................................8

*Am. Ins. Ass'n v. Garamendi*,
    539 U.S. 396 (2003) ...................................................................................17

*Beneficial Nat. Bank v. Anderson*,
    539 U.S. 1 (2003) ..................................................................................2, 11

*Buckman Co. v. Plaintiffs' Legal Comm.*,
    531 U.S. 341 (2001) ..........................................................................5, 11, 15

*Caterpillar Inc. v. Williams*,
    482 U.S. 386 (1987) .....................................................................................4

*Chamber of Commerce of U.S. v. Whiting*,
    563 U.S. 582 (2011) ...................................................................................11

*Cheminor Drugs, Ltd. v. Ethyl Corp.*,
    168 F.3d 119 (3d Cir. 1999) ........................................................................9

*Chicago & NW Transp. Co. v. Kalo Brick & Tile Co.*,
    450 U.S. 311 (1981) ...................................................................................15

*City of Greensburg v. Wisneski*,
    75 F. Supp. 3d 688 (W.D. Pa. 2015) ..........................................................8

*City of Tacoma v. Taxpayers of Tacoma*,
    357 U.S. 320 (1958) ...................................................................................15

*Dart Cherokee Basin Operating Co. v. Owens*,
    574 U.S. 81 (2014) .......................................................................................3

*Dawson ex rel Thompson v. Ciba-Geigy Corp., USA*,
    145 F. Supp. 2d 565 (D.N.J. 2001) ...........................................................15

*Desktop Alert, Inc. v. ATHOC, Inc.*,
2016 WL 1477029 (D.N.J. Feb. 24, 2016) ...............................................9

*Doe I v. UPMC*,
2020 WL 4381675 (W.D. Pa. July 31, 2020) ....................................17, 19

*Doran v. Purdue Pharma Co.*,
324 F. Supp. 2d 1147 (D. Nev. 2004)....................................................10

*E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.*,
365 U.S. 127 (1961)................................................................................9

*Empire Healthchoice Assur., Inc. v. McVeigh*,
547 U.S. 677 (2006)......................................................................5, 6, 9

*Fouad v. Milton Hershey Sch. & Sch. Tr.*,
2020 WL 5775018 (M.D. Pa. Sept. 28, 2020) .........................................9

*Goepel v. Nat'l Postal Mail Handlers Union, a Div. of LIUNA*,
36 F.3d 306 (3d Cir. 1994)..............................................................13, 14

*Golden v. N.J. Inst. of Tech.*,
934 F.3d 302 (3d Cir. 2019)..................................................................16

*Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*,
545 U.S. 308 (2005)..................................................................... passim

*Gunn v. Minton*,
568 U.S. 251 (2013)......................................................................4, 7, 8, 9

*Hamdi v. Rumsfeld*,
542 U.S. 507 (2004).............................................................................11

*In re Commonwealth's Motion to Appoint Couns.*,
790 F.3d 457 (3d Cir. 2015)........................................................ passim

*In re: Skelaxin (Metaxalone) Antitrust Litig.*,
2014 WL 12577068 (E.D. Tenn. May 20, 2014)................................8, 10

*Japan Line, Ltd. v. Cty. of Los Angeles,*
    441 U.S. 434 (1979)..................................................................................11, 15

*Jefferson County, Ala. v. Acker,*
    527 U.S. 423 (1999)..............................................................................................3

*Louisiana v. Pfizer, Inc.,*
    2015 WL 10012989 (M.D. La. Sept. 2, 2015)....................................................8

*Mayo v. United States,*
    319 U.S. 441 (1943)..........................................................................................11

*McGuire Oil Co. v. Mapco, Inc.,*
    958 F.2d 1552 (11th Cir. 1992) .........................................................................9

*Medtronic, Inc. v. Lohr,*
    518 U.S. 470 (1996)..........................................................................................15

*Michelin Tire Corp. v. Wages,*
    423 U.S. 276 (1976)..........................................................................................17

*New Jersey Dep't of Env't Prot. v. Dixo Co., Inc.,*
    2006 WL 2716092 (D.N.J. Sept. 22, 2006) ......................................................3

*NLMK v. United States,*
    Case No. 20-00050, Dkt. 63 (C.I.T. Nov. 12, 2020).....................................2, 12

*Nusire, v. Bristol W. Ins. Co.,*
    2015 WL 5783688 (E.D. Pa. Oct. 5, 2015)........................................................3

*Orelski v. Pearson,*
    337 F. Supp. 2d 695 (W.D. Pa. 2004) ..............................................................15

*Papp v. Fore-Kast Sales Co.,*
    842 F.3d 805 (3d Cir. 2016)..............................................................................18

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.,*
    998 F.2d 1192 (3d Cir. 1993)..............................................................................3

# TABLE OF AUTHORITIES
## (cont'd)

Page

*Ry. Labor Executives Ass'n v. Pittsburgh & Lake Erie R. Co.*,
    858 F.2d 936 (3d Cir. 1988)..........................................................12, 13

*Stehney v. Perry*,
    101 F.3d 925 (3d Cir. 1996).................................................................11

*United Mine Workers of America v. Pennington*,
    381 U.S. 657 (1965)...............................................................................9

*United States v. Maine*,
    420 U.S. 515 (1975).......................................................................11, 15

*W. Virginia ex rel. Morrisey v. Pfizer, Inc.*,
    969 F. Supp. 2d 476 (S.D.W. Va. 2013)...............................................9

*Watson v. Philip Morris Cos., Inc.*,
    551 U.S. 142 (2007).............................................................................19

*We, Inc. v. City of Philadelphia*,
    174 F.3d 322 (3d Cir. 1999).................................................................10

*Wheeling-Pittsburgh Steel Corp. v. Mitsui & Co.*,
    26 F. Supp. 2d 1022 (S.D. Ohio 1998) ...............................................16

**STATUTES**

5 U.S.C. § 702..............................................................................2, 12, 14

18 U.S.C. § 1001.................................................................................15

19 U.S.C. § 1862.........................................................................1, 8, 17

28 U.S.C. § 1331.....................................................................................4

28 U.S.C. § 1442(a)(1)...........................................................2, 16, 17, 18

28 U.S.C. § 1447(d).............................................................................17

28 U.S.C. § 2631(i)...................................................................2, 12, 14

# TABLE OF AUTHORITIES
## (cont'd)

Page

OTHER AUTHORITIES

15 C.F.R. pt. 705, Supp. 1 .................................................................................1, 5, 6, 10

83 Fed. Reg. 12106 (Mar. 19, 2018) ...........................................................................1, 18

83 Fed. Reg. 46026 (Sept. 11, 2018) .................................................................................1

84 Fed. Reg. 26751 (June 10, 2019) .................................................................................1

85 Fed. Reg. 81060 (Dec. 14, 2020) .................................................................................1

Presidential Proclamation 9705 of March 8, 2018, "Adjusting Imports of Steel
    Into the United States," 83 Fed. Reg. 11625 .................................................... passim

U.S. Const. Article I., § 8, cl. 3 .................................................................................11, 15

U.S. Const. Article I, § 10, cl. 2 ................................................................................11, 15

Plaintiffs' Motion to Remand, Dkt. 18, portrays this action as a run-of-the-mill state law tort case. But scratching the surface reveals that NLMK's Complaint is a broadside attack on the United States Department of Commerce's implementation of tariffs imposed by Presidential Proclamation to protect the national security of the United States.[1] Having exhausted the robust federal administrative and judicial process to challenge Commerce's decisions, NLMK now seeks to shift the tariffs it paid to U. S. Steel—effectively reversing Commerce's decisions and directly undermining the federal policies behind the Section 232 tariff regime. Simply put, NLMK is unhappy that Commerce denied its requests for tariff exclusions. Attempting to recoup its tariff payments in this case, NLMK blames U. S. Steel for Commerce's decisions and faults U. S. Steel for participating in Commerce's process according to Commerce's regulations. That position is based on claims that U. S. Steel acted improperly during the federal proceedings, allegations that are inextricably intertwined with and dependent on NLMK's (incorrect) construction of federal regulations governing the Section 232 tariff exclusion process. In short, this is a federal case, implicating uniquely federal interests, masquerading as an action grounded in state law. NLMK's motion therefore fails for three reasons.

*First*, federal jurisdiction is proper because the Complaint "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). Plaintiffs do not dispute that this case necessarily raises disputed federal questions. And as explained in

---

[1] The Section 232 process and governing law are described in the Notice of Removal. *See* Notice ¶¶ 2-7; *see also* 19 U.S.C. § 1862; 15 C.F.R. Pt. 705, Supp. 1; Presidential Proclamation 9705 of March 8, 2018, "Adjusting Imports of Steel Into the United States," 83 Fed. Reg. 11625 ("Proclamation 9705"); 83 Fed. Reg. 12106 (Mar. 19, 2018); 83 Fed. Reg. 46026 (Sept. 11, 2018); 84 Fed. Reg. 26751 (June 10, 2019); 85 Fed. Reg. 81060 (Dec. 14, 2020).

U. S. Steel's Notice of Removal, Dkt. 1, ("Notice"), those federal questions are of substantial importance:  the Complaint is a thinly-veiled attack on not only specific Commerce decisions but also administration of the Section 232 tariffs in general.  Finally, there is no risk that federal jurisdiction would disturb the federal-state balance, as these uniquely federal interests will rarely arise in state tort cases.  This Court therefore has *Grable* jurisdiction.

*Second*, federal jurisdiction is proper because NLMK's state-law claim is completely preempted by federal law.  *See Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 (2003).  The fundamental interest Plaintiffs assert is their purported entitlement to certain tariff exclusions Commerce denied.  But that interest cannot properly be vindicated through a state-law cause of action.  Instead, Plaintiffs had—and pursued—a federal cause of action to seek review of Commerce's decisions.  *See* 5 U.S.C. § 702; 28 U.S.C. § 2631(i); *NLMK v. United States*, Case No. 20-00050, Dkt. 63 (C.I.T. Nov. 12, 2020).  That exclusive process completely preempts this state-law claim.  *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 207-08 (2004).

*Third*, 28 U.S.C. § 1442(a)(1) permits removal when state litigation challenges defendants' actions to assist a federal agency.  The President imposed the tariffs at issue and authorized Commerce to grant tariff exclusions for identified reasons to further federal interests in national security and foreign commerce.  Commerce had discretion over how to review exclusion requests, and opted to create an adversarial process in which domestic producers could submit information regarding domestic supply in response to specific exclusion requests to inform Commerce's exclusion decisions.  Pursuant to Commerce's regulations and procedures, U. S. Steel submitted the requested information in objections to certain exclusion requests.  State claims based on that conduct threaten interference with a federal national security program and are removable pursuant to Section 1442(a)(1).

None of the arguments in Plaintiffs' brief supporting remand, Dkt. 19, ("Br.") defeats federal jurisdiction. While Plaintiffs frame this case as a simple dispute over U. S. Steel's production capacity, that framing is belied by both the Complaint itself and the public record. This case will turn on the validity, construction, and effect of federal regulations governing Commerce's process for reviewing exclusion requests. Those issues belong in federal court.

## STANDARD OF REVIEW

Plaintiffs ignore important principles that govern their motion. *First*, while the Court must "accept all well-pleaded allegations as true, it need not credit a party's 'bald assertions' or 'legal conclusions.'" *New Jersey Dep't of Env't Prot. v. Dixo Co., Inc*., 2006 WL 2716092, at *4 (D.N.J. Sept. 22, 2006) (quoting *Morse v. Lower Merion School Dist*., 132 F.3d 902, 906 (3d Cir. 1997)). Nor must a Court accept as true allegations that are contradicted by "matters of public record" or by documents on which the Plaintiffs' claims rely. *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc*., 998 F.2d 1192, 1196 (3d Cir. 1993).

*Second*, when considering a motion to remand, courts must also accept the allegations in the notice of removal as true, at least where they do not conflict with the allegations in the Complaint. *See Nusire, v. Bristol W. Ins. Co*., 2015 WL 5783688, at *2 (E.D. Pa. Oct. 5, 2015) (citing *J&J Mobile Home Park Inc. v. Bell*, 266 F. App'x 195, 196 (3d Cir. 2008)). Particularly when considering jurisdiction under the federal officer removal statute, the Court must also "credit [defendant's] theory of the case," *Jefferson County, Ala. v. Acker*, 527 U.S. 423, 432 (1999), and "construe the facts in the removal notice in the light most favorable to the [defendant]." *In re Commonwealth's Motion to Appoint Couns.*, 790 F.3d 457, 466 (3d Cir. 2015); *see also Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 87-88 (2014).

## ARGUMENT

### I.    U. S. Steel Properly Removed This Case Under *Grable*.

Federal courts have jurisdiction under 28 U.S.C. § 1331 over "all civil actions arising under the Constitution, laws, or treaties of the United States." Federal jurisdiction exists where a "state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314; *see also Gunn v. Minton*, 568 U.S. 251, 258 (2013) (stating the same test); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (stating well-pleaded complaint rule).[2] Each of these elements are met here. Plaintiffs do not and cannot dispute that federal questions are both necessarily raised and actually disputed in this case. *See* Notice ¶¶ 19-22. As the Notice of Removal made clear, those questions are of substantial importance to the federal system and implicate uniquely federal interests, thus satisfying the third and fourth requirements for *Grable* jurisdiction.

## A. This Case Turns On Substantial Questions Regarding The Validity, Construction, And Effect Of Federal Law.

As explained in the Notice of Removal, the federal questions raised by this case are not limited to fact-bound or situation-specific questions regarding particular exclusion requests but instead sweep far more broadly to address the validity, construction, and effect of federal law. *See* Notice ¶¶ 21-23. To begin, a court addressing NLMK's claims will need to resolve whether any party is ever "entitled" to any exclusion, or whether Commerce retains discretion to refuse exclusion requests. *Compare* Complaint, Dkt. 1-2 ("Compl.") ¶¶ 8, 33, 35, 46, 60, 90 ("NLMK was wrongly forced to pay substantial tariffs from which it was entitled to exclusions."), *with*

---

[2] The statute also almost always provides federal jurisdiction for causes of action created by federal law: "As a rule of inclusion, this 'creation' test admits of only extremely rare exceptions." *Gunn*, 568 U.S. at 257. Plaintiffs rely on this quote to suggest that *Grable* jurisdiction is "extremely rare," but the quote makes the inverse point that it is extremely rare for federal courts to *lack* jurisdiction over federally-created claims. *See id.* (citing *Shoshone Mining Co. v. Rutter*, 177 U.S. 505 (1900), as an example).

Proclamation 9705 § 3 (authorizing, but not requiring, Commerce to grant exclusions under certain circumstances); 15 C.F.R. Pt. 705, Supp. 1(c)(6)(iii)(A) (describing circumstances in which exclusion "will likely" be granted). That question—regarding the scope of a federal agency's discretion under a Presidential Proclamation—plainly belongs in federal court.

Next, Plaintiffs' claims are predicated on an incorrect interpretation of federal regulations. Plaintiffs allege that U. S. Steel "committed to producing and being willing to provide over 36 million tons of steel slab" through its objections. Compl. ¶ 15. But U. S. Steel never said that. NLMK instead has aggregated the tonnages implicated by U. S. Steel's objections to "more than 450 exclusion requests," *id.*, and the merits of NLMK's argument depend entirely on how federal regulations governing the objection process are interpreted. *See* Notice ¶ 22; 15 C.F.R. Pt. 705, Supp. 1. Similarly, Plaintiffs allege that U. S. Steel improperly objected to requests by falsely representing it could produce 10-inch steel slab. Compl. ¶ 17. Here again, the public record makes clear that U. S. Steel never represented that it could produce 10-inch slabs, but instead objected based on its ability to produce a substitute product. *See* Notice ¶ 23. Plaintiffs' allegations, then, turn on *legal* questions regarding the proper role of substitute products in the objection process. *See* 15 C.F.R. Pt. 705, Supp. 1(c)(6)(ii). Commerce rejected Plaintiffs' arguments at each turn during the Section 232 process, but Plaintiffs now attempt to overturn those decisions based on a conflicting interpretation of federal law.

The underlying facts are not in dispute. U. S. Steel does not claim that it could produce 10-inch slab or the aggregate volume of all of the steel slabs for which importers requested exclusions. Moreover, U. S. Steel's objections are matters of public record and the statements made therein are not subject to dispute. Therefore, like *Grable*, this case will center on "nearly pure issue[s] of law," *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 700 (2006)

(quotation marks omitted), including whether Commerce's regulations properly allow parties to object based on their ability to produce substitute products, *see* 15 C.F.R. Pt. 705, Supp. 1(c)(6)(ii); whether Commerce properly evaluates (and seeks objections to) each exclusion request individually rather than in the aggregate, *see* Notice ¶ 22; and whether an objector commits to providing steel to a particular party or under certain conditions by filing an objection, *see* Compl. ¶ 15; *see also* Notice ¶¶ 21-23 (identifying additional questions of federal law necessarily raised by the Complaint). These questions of federal law are not only dispositive of this case, but of substantial import to the federal system.

Resolution of these questions has the potential to be controlling in numerous other cases involving other parties. Indeed, it is not difficult to foresee who might bring these future cases: many parties who submitted exclusion requests have sued Commerce in the Court of International Trade based on allegations closely resembling those NLMK made in its C.I.T. lawsuit.[3] Depending on the resolution of this case, those same parties may turn next to claims against the domestic steel producers, including but not limited to U. S. Steel, who have submitted objections to Commerce. And because the Section 232 exclusion process is ongoing, resolution of this case has the potential to control not only U. S. Steel's approach to future objections but also the behavior of other potential objectors. As in *Grable* itself, this case's impact on future cases militates in favor of a federal forum. *See Empire Healthchoice*, 547 U.S. at 700 (noting propriety of federal jurisdiction where federal questions can "be settled once and for all and thereafter [] govern numerous" other potential cases) (quotation marks omitted).

---

[3] *See, e.g., North American Interpipe, Inc. v. United States*, Case No. 20-03825 (C.I.T. Nov. 5, 2020); *Evraz Inc. NA v. United States*, Case No. 20-03869 (C.I.T. Nov. 20, 2020); *AM/NS Calvert LLC v. United States*, Case No. 21-00005 (C.I.T. Jan. 8, 2021); *California Steel Industries, Inc. v. United States*, Case No. 21-00015 (C.I.T. Jan. 14, 2021); *Valbruna Slater Stainless, Inc. v. United States*, Case No. 21-00027 (C.I.T. Jan. 26, 2021); *Voestalpine High Performance Metals Corp. and EDRO Specialty Steels, Inc. v. United States*, Case No. 21-00093 (C.I.T. Mar. 5, 2021).

Plaintiffs' mistakenly rely on *Gunn v. Minton*, where the Supreme Court held a state legal malpractice case based on a lawyer's allegedly deficient performance during a prior federal patent case did not raise a substantial federal question.  568 U.S. at 263-64.  To start, the sole federal question in that case was what result a federal court might have reached had a particular patent validity argument been raised before it.  As the Supreme Court recognized, resolution of that hypothetical would have no precedential effect in any future cases.  *See id*. at 261-62.  Patent cases take place exclusively in the federal system, and so would not be affected.  *Id*. at 262.  And even future legal malpractice cases within the same state would be bound by federal, rather than state, decisions when construing patent law.  *Id*. ("It is those [federal] precedents, after all, that would have applied had the argument been made.").  It was precisely that lack of precedential effect that made *Gunn* "'poles apart from *Grable*.'"  *Id*. (quoting *Empire Healthchoice*, 547 U.S. at 700).

But as explained above, this case *will* control future cases.  The Complaint does not raise hypothetical questions about legal arguments that were not made (as in *Gunn*), but instead, seeks to establish new legal standards for the Section 232 exclusion process and a ruling that U. S. Steel's violation of those standards induced improper decisions from Commerce.  Additionally, like *Grable*, the Complaint directly implicates ongoing federal issues concerning interpretation and implementation of federal law.  Any future Pennsylvania court litigation regarding the Section 232 process will be bound by the legal rulings here.  And if the same questions later arise in another state or in federal court, participants in the Section 232 process may be faced with differing or even contradictory standards of conduct imposed by different judicial circumstances.  Federal jurisdiction ameliorates this risk.

Plaintiffs also fail to grapple with the practical effect of a decision in their favor.  In

*Gunn*, federal jurisdiction was unnecessary in part because a malpractice case could "not change the real-world result of the prior federal patent litigation" because the "patent will remain invalid." 568 U.S. at 261. The opposite is true here. While Commerce's decision imposing tariffs on NLMK might remain valid as a technical matter, an NLMK victory here would reverse that decision's real-world effects.[4] As the Presidential Proclamation announcing the tariffs explained, Section 232 tariffs are intended to promote national security by imposing costs on those choosing to import steel, thereby incentivizing them to purchase from domestic suppliers and supporting domestic steel production. Proclamation 9705 ¶¶ 2, 4-5, 8. A decision holding U. S. Steel liable to NLMK for the tariffs it paid under this scheme would not only eliminate the incentive for NLMK to seek out domestic steel, it would shift the costs of the tariffs to a domestic steel producer, the very party the tariffs are designed to protect for purposes of national security, and undermine all future Section 232 proceedings. The holding Plaintiffs seek here is a far cry from the "hypothetical" holding in *Gunn*. 568 U.S. at 261.[5]

That real-world effect sets this case apart from the cases on which Plaintiffs rely. Many of Plaintiffs' cases involve challenges to the *losing* party's conduct in a prior federal proceeding.[6] In these cases, the later suit did not suggest the earlier proceeding reached a flawed

---

[4] Although Commerce settled with NLMK with respect to certain of the exclusion requests at issue, Commerce has consistently maintained that NLMK was not wrongfully denied any exclusions. *See* Notice ¶ 19.

[5] Section 232 tariffs are not intended to raise revenue, and the statute contemplates that they may decrease revenue. *See* 19 U.S.C. § 1862(d). Revenue collected is incidental, and the relevant impact is the effect on national security, not on the Federal Fisc.

[6] *See, e.g.*, *City of Greensburg v. Wisneski*, 75 F. Supp. 3d 688, 692 (W.D. Pa. 2015) (claims based on defendants' *unsuccessful* federal lawsuit); *Allergan, Inc. v. Ferrum Ferro Cap., LLC*, 2015 WL 12670417, at *6 (C.D. Cal. Dec. 28, 2015) (claims based on defendants' *unsuccessful* inter partes review filing); *Louisiana v. Pfizer, Inc.*, 2015 WL 10012989, at *5 (M.D. La. Sept. 2, 2015), *report and recommendation adopted*, 2016 WL 521533 (M.D. La. Feb. 5, 2016) (claims based on *unsuccessful* federal lawsuits and rejected administrative submissions); *In re: Skelaxin (Metaxalone) Antitrust Litig.*, 2014 WL 12577068, at *4-5, 9 (E.D. Tenn. May 20, 2014) (claims

result, much less risk effectively reversing a federal judgment.  The remainder are, like *Gunn*,

cases in which the real-world effect of the federal decision would persist despite the later

proceeding.[7]  Unsurprisingly, Plaintiffs do not cite any cases in which federal jurisdiction was

denied in a proceeding with the potential to *reverse* the effect of a federal decision.  In any such

case, "[t]he [federal] Government . . . has a direct interest in the availability of a federal forum to

vindicate its own administrative action."  *Grable*, 545 U.S. at 315.  In other words, as the

Supreme Court has recognized, federal interests are likely to be implicated when, as in this case,

the "claim was triggered . . . by the action of [a] federal department, agency, or service," *Empire*

*Healthchoice*, 547 U.S. at 700, and that action may be effectively nullified.

Finally, Plaintiffs improperly discount the independent federal questions presented by

*Noerr-Pennington*.[8]  "*Noerr-Pennington* immunity is not merely an affirmative defense."

*McGuire Oil Co. v. Mapco, Inc.*, 958 F.2d 1552, 1558 n.9 (11th Cir. 1992).  Rather, where, as

here, plaintiffs allege liability arising entirely from petitioning activity, plaintiffs bear the burden

of establishing an exception to *Noerr-Pennington*.  *Id*.  In other words, establishing a *Noerr-*

*Pennington* exception is a necessary element of Plaintiffs' claim in this case, and is therefore

---

based on *unsuccessful* assertion of invalidated patents); *Desktop Alert, Inc. v. ATHOC, Inc.*, 2016 WL 1477029, at *1 (D.N.J. Feb. 24, 2016), *report and recommendation adopted*, 2016 WL 1450551 (D.N.J. Apr. 13, 2016) (claims based on submission the government had "disavowed").

[7] *See, e.g.*, *W. Virginia ex rel. Morrisey v. Pfizer, Inc.*, 969 F. Supp. 2d 476, 485 (S.D.W. Va. 2013) (claims based on misconduct as to partially-invalidated patent would have no real-world effect on patent validity); *Fouad v. Milton Hershey Sch. & Sch. Tr.*, 2020 WL 5775018, at *8 (M.D. Pa. Sept. 28, 2020) (claims based on improper purpose behind subpoenas in concluded federal litigation did not call federal decisions into question or change subpoenas' effect).

[8] Plaintiffs do not dispute that *Noerr-Pennington* immunity is facially applicable to the conduct alleged in the Complaint, as explained in the Notice of Removal.  *See* Notice ¶¶ 24-25; *see also Cheminor Drugs, Ltd. v. Ethyl Corp.*, 168 F.3d 119, 122 (3d Cir. 1999); *E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *United Mine Workers of America v. Pennington*, 381 U.S. 657 (1965).

"necessarily raised" for purposes of federal question jurisdiction. *See, e.g., In re: Skelaxin (Metaxalone) Antitrust Litig.*, 2014 WL 12577068, at *3-6 (E.D. Tenn. May 20, 2014); *Doran v. Purdue Pharma Co.*, 324 F. Supp. 2d 1147, 1151 (D. Nev. 2004).

The sole Third Circuit case Plaintiffs cite to suggest *Noerr-Pennington* issues are not "necessarily raised," *We, Inc. v. City of Philadelphia*, 174 F.3d 322 (3d Cir. 1999), does not support that position. That case did not address federal question jurisdiction, but instead asked whether *Noerr-Pennington* provided "immunity from suit" or only immunity from "liability" for purposes of determining whether denial of a *Noerr-Pennington*-based summary judgment motion was immediately appealable. *Id.* at 325. The case cannot be read as reducing Plaintiffs' burden of proof in a case seeking to impose liability for constitutionally protected petitioning activity.

Nor is this a case where resolution of *Noerr-Pennington* immunity is highly fact-bound. *See, e.g., Skelaxin*, 2014 WL 12577068, at *8-9. As with the other federal questions discussed above, the question of *Noerr-Pennington* immunity will turn not on disputed facts but rather on the validity, construction, and effect of federal regulations. For example, whether U. S. Steel's objections were "shams" because they relied on the ability to provide substitute products, rather than products identical to those named in the exclusion request, turns on the validity and construction of 15 C.F.R. Pt. 705, Supp. 1(c)(6)(ii). Plaintiffs' burden to establish an exception to *Noerr-Pennington* thus provides an additional basis for federal question jurisdiction.

**B.    Accepting Federal Jurisdiction In This Case Would Not Upset The Federal-State Balance.**

Plaintiffs assert in a footnote that this case is not subject to *Grable* jurisdiction because it would disturb federal-state balance to find federal jurisdiction here. Br. 6 n.2. The sole reason Plaintiffs provide for this purported disturbance is that Plaintiffs allege only a state-law cause of action. *Id.* Of course, the complaint always relies solely on state-law causes of action when

*Grable* jurisdiction is at issue, so this element cannot turn on that fact alone. Instead, the relevant point is that here, as in *Grable*, "it will be the rare state [unfair competition] case that raises a contested matter of federal law." 545 U.S. at 315. Thus, "federal jurisdiction to resolve genuine disagreement over federal [Section 232 tariff exclusion] provisions will portend only a microscopic effect on the federal-state division of labor." *Id.*

The overwhelmingly federal context of the allegations in this case further underline the propriety of federal jurisdiction in this case. To start, Plaintiffs' claims are based wholly on alleged misrepresentations made to a federal agency to influence the agency's decisions. "Policing fraud against federal agencies is hardly a field which the States have traditionally occupied," *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 347 (2001) (quotation marks omitted), so federal jurisdiction over such claims would hardly upset any traditional balance of federal and state power. *Cf. Mayo v. United States*, 319 U.S. 441, 445 (1943). Moreover, the only harm that Plaintiffs allege stems directly from their payment of tariffs imposed by the federal government based on national security interests, *see* Compl. ¶¶ 81-85, implicating the federal government's unique interests in the regulation of foreign trade and in national security. *See, e.g.*, U.S. Const. Art. I, § 10, cl. 2; U.S. Const. Art. I., § 8, cl. 3; *Japan Line, Ltd. v. Cty. of Los Angeles*, 441 U.S. 434, 448 (1979); *United States v. Maine*, 420 U.S. 515, 522 (1975); *Chamber of Commerce of U.S. v. Whiting*, 563 U.S. 582, 604 (2011); *Hamdi v. Rumsfeld*, 542 U.S. 507, 580 (2004) (Thomas, J., dissenting). In short, federal jurisdiction would reflect, rather than upset, traditional divisions between state and federal authority, and is therefore appropriate in this case. *See, e.g., Stehney v. Perry*, 101 F.3d 925, 939 (3d Cir. 1996).

## II.    Federal Jurisdiction Is Proper Because NLMK's Claim Is Completely Preempted.

This Court also has jurisdiction because NLMK's claim is completely preempted by federal law. *See Beneficial*, 539 U.S. at 8. When considering complete preemption, (1) "the

federal court must first ask whether the statute relied upon by the defendant as preemptive contains civil enforcement provisions within the scope of which the plaintiff's state claim falls," and (2) "the federal court must further inquire whether there is a clear indication of a Congressional intention to permit removal despite the plaintiff's exclusive reliance on state law." *Ry. Labor Executives Ass'n v. Pittsburgh & Lake Erie R. Co.*, 858 F.2d 936, 942 (3d Cir. 1988). Each prong is satisfied here, where NLMK had—and pursued—a federal cause of action to vindicate its interest in tariff exclusions and where Congress plainly intended that cause of action to be exclusive of any state actions. *See* Notice ¶¶ 27-34; 5 U.S.C. § 702; 28 U.S.C. § 2631(i); *NLMK v. United States*, Case No. 20-00050, Dkt. 63 (C.I.T. Nov. 12, 2020).

A. **Plaintiffs Had A Federal Cause Of Action To Vindicate Their Interest In Tariff Exclusions.**

As Plaintiffs acknowledge, "the *sine qua non* for complete preemption is [] the existence of an exclusive federal cause of action addressing the claimed wrong." Br. 13. Here, the sole injury Plaintiffs allege is Commerce's wrongful denial of tariff exclusions. *See, e.g.*, Compl. ¶ 19 ("Commerce wrongly denied all 162 of NLMK's exclusion requests."). That purported injury could be addressed not only before Commerce, but also through federal judicial review under 5 U.S.C. § 702 and 28 U.S.C. § 2631(i). And in fact, Plaintiffs filed suit against Commerce and obtained a stipulated judgment regarding certain of the exclusion requests at issue. *NLMK v. United States*, Case No. 20-00050, Dkt. 63 (C.I.T. Nov. 12, 2020). To be sure, Plaintiffs assert here that U. S. Steel *caused* Commerce to deny Plaintiffs' exclusion requests. But that argument, too, was fully available to and actually made by Plaintiffs in their suit against Commerce. *See* Notice ¶ 30 (comparing the allegations in the two complaints).

Because Plaintiffs' current claim is within the scope of their federal right of action, it makes no difference that the elements of the state claim are not "strictly duplicative" of the

federal claim or that Plaintiffs seek remedies here that could not have been obtained in that suit. *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 216 (2004). As the Supreme Court has explained, the exclusivity of federal causes of action "would be undermined if state causes of action that supplement [their] remedies were permitted, even if the elements of the state cause of action did not precisely duplicate the elements of [the federal claim]." *Id*. Thus, the question is not whether the federal claim is identical, but whether it "vindicat[es] the same interest the plaintiff's state cause of action seeks to vindicate." *Ry. Labor Executives Ass'n*, 858 F.2d at 942. That a state might vindicate that interest in a different way is irrelevant—Congress's choice of remedies is "an inherent part of the 'careful balancing'" of a statutory scheme. *Aetna Health*, 542 U.S. at 215. That Congress chose not to create a private cause of action against objectors in the Section 232 process, but rather provided solely for direct judicial review of Commerce's decisions, does not license states or private parties to create a parallel claim vindicating the same interest. Instead, Congress's choice to provide a cause of action only against Commerce confirms that Plaintiffs cannot collaterally attack Commerce's decisions through a suit against U. S. Steel.

Plaintiffs attempt to avoid this result by asserting that "a federal statute does not preempt state law claims against a private defendant where the federal law provides only for a cause of action against the United States." Br. 14. That purported bright-line rule, however, finds no support in the case law. NLMK's sole authority, *Goepel v. Nat'l Postal Mail Handlers Union, a Div. of LIUNA*, 36 F.3d 306 (3d Cir. 1994), rejected complete preemption where a health plan beneficiary had no federal claim *against any party* to vindicate its right to medical benefits. Under federal law, the beneficiary could ask a federal agency to review a claim denial; but if the federal agency concurred with the denial, federal law did not provide a cause of action against *either* the agency or the plan itself. *Id*. at 312-13 (quoting a federal regulation providing that "an

13

enrollee's dispute of an [agency] decision solely because it concurs in a health plan carrier's denial of a claim" is not a basis for APA review). Only after explaining that the agency's decision was not reviewable under federal law did the court conclude the beneficiaries lacked "a statutory cause of action vindicating the same interests that the [plaintiffs'] state causes of action seek to vindicate, namely the recovery of benefits from the Plan." *Id*. at 313.

Far from suggesting that APA review cannot be completely preemptive, then, *Goepel* implies the opposite: Regardless of the form an exclusive federal cause of action takes, if it vindicates the same interest as a state cause of action, it completely preempts the state law. In this case, the only interest Plaintiffs assert is their interest in tariff exclusions that were allegedly wrongfully denied. The exclusive mechanism for vindicating the right to tariff exclusions is judicial review under 5 U.S.C. § 702 and 28 U.S.C. § 2631(i). Therefore, the federal cause of action completely preempts Plaintiffs' state-law claim.

### B. The Federal Cause Of Action Is Exclusive.

In a footnote, Plaintiffs also dispute the second prong of complete preemption, suggesting that because this case is "limited" to "one thing—and one thing only—U. S. Steel's conduct," there is no interest in exclusive federal jurisdiction. Br. 14 n.4. But that argument ignores this case's heart: NLMK's purported entitlement to exclusions from federal tariffs. As explained above, if Plaintiffs prevail here, Commerce's decisions effectively will be reversed. Commerce concluded Plaintiffs should face a tariff if they chose to import steel rather than obtain it domestically, based on a policy promoting domestic production as necessary for national security. If Plaintiffs prevail here, not only will Plaintiffs face no incentive to obtain steel domestically, but the cost of the tariff will be imposed instead on a domestic steel producer. That alone reflects the substantial federal interests at stake in this case, and the justifications behind the rule generally forbidding any "attempt by a disappointed [litigant] to gain from the

[state] courts the relief it was denied" by a federal agency. *Chicago & NW Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 324 (1981). In other words, where (as here) there is a process for regulatory and judicial review of an agency action, it "necessarily preclude[s] de novo litigation between the parties of all issues inhering in the controversy, and all other modes of judicial review." *City of Tacoma v. Taxpayers of Tacoma*, 357 U.S. 320, 336 (1958).

The sole case Plaintiffs rely on to dispute the exclusivity of the federal remedy is inapposite. To begin, in *Dawson ex rel Thompson v. Ciba-Geigy Corp., USA*, 145 F. Supp. 2d 565 (D.N.J. 2001), both prongs of complete preemption were lacking, as the federal cause of action did not vindicate the same interests as the state claim. Under those circumstances, it is hardly surprising that the federal cause of action did not displace a state claim addressing distinct interests. Moreover, *Dawson* involved an ordinary products liability claim, which preexisted and was independent of any federal regulations. *Id.* at 567. There is a strong presumption against preemption for such claims. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) (describing presumption given "the historic primacy of state regulation of matters of health and safety").

By contrast, "Under the Supremacy Clause, there is a presumption *in favor of* preemption in fields that are inherently federal in character and that the states have not traditionally occupied." *Orelski v. Pearson*, 337 F. Supp. 2d 695, 699 (W.D. Pa. 2004) (citing *Buckman*, 531 U.S. at 347) (emphasis added). At least three such fields are implicated here: (1) fraud on a federal agency, *see Buckman*, 531 U.S. at 347; 18 U.S.C. § 1001; (2) foreign commerce, *see* U.S. Const. Art. I, § 10, cl. 2; U.S. Const. Art. I., § 8, cl. 3.; *Japan Line*, 441 U.S. at 448; and (3) national security, *see United States v. Maine*, 420 U.S. at 522 ("[A]s a matter of purely legal principle . . . the Constitution . . . allotted to the federal government jurisdiction over foreign commerce, foreign affairs and national defense"). Federal interests are so substantial here that

Plaintiffs' claims could not exist apart from federal law—Plaintiffs' purported injuries all stem directly from federal tariffs.  *See* Compl. ¶¶ 81-85.

Because Plaintiffs seek to vindicate their interest in tariff exclusions that Commerce denied them, and because federal law provides the exclusive review mechanism for those denials, Plaintiffs' claim is completely preempted, and federal jurisdiction is proper.  *Cf. Wheeling-Pittsburgh Steel Corp. v. Mitsui & Co.*, 26 F. Supp. 2d 1022, 1028 (S.D. Ohio 1998).

## III.  Because U. S. Steel Acted Under Commerce In Submitting Section 232 Objections, Removal Is Proper Under 28 U.S.C. § 1442(a)(1).

Section 1442(a)(1) allows removal of any case "commenced in a State court" against "any officer (or any person acting under that officer) of the United States" and "relating to any act under color of such office."  Federal officer removal is appropriate when a defendant shows: "(1) it is a 'person' within the meaning of the statute; (2) the [plaintiff's] claims are based upon the [defendant's] conduct 'acting under' the United States, its agencies, or its officers; (3) the [plaintiff's] claims against it are 'for, or relating to' an act under color of federal office; and (4) it raises a colorable federal defense to the [plaintiff's] claims."  *In re Commonwealth's Motion to Appoint Couns.*, 790 F.3d 457, 467 (3d Cir. 2015) ("Def. Ass'n"); *see also Golden v. N.J. Inst. of Tech.*, 934 F.3d 302, 311 (3d Cir. 2019).

All of these elements are satisfied here, and removal was proper under § 1442(a)(1).  Plaintiffs do not and cannot dispute that U. S. Steel is a "person," that the allegations in the Complaint "relate to" U. S. Steel's relationship with Commerce, or that U. S. Steel has colorable federal defenses to the Complaint.  *See* Notice ¶¶ 37-39, 54-61.  Instead, NLMK disputes only the second element, asserting that because U. S. Steel is a "publicly-traded company" rather than a federal officer, it cannot remove this suit under 28 U.S.C. § 1442(a)(1).  Br. 15.

That narrow reading finds no support in the case law, which makes clear that "the federal

officer removal statute is to be 'broadly construed' in favor of a federal forum." *Def. Ass'n*, 790 F.3d at 467 (quoting *Sun Buick, Inc. v. Saab Cars USA, Inc.*, 26 F.3d 1259, 1262 (3d Cir. 1994)).[9] In particular, the "words 'acting under' are broad" and must be "'liberally construed.'" *Id.* (quoting *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 147 (2007)). Given this liberal construction, "the relevant inquiry . . . is not whether there is an agent-principal arrangement between the private entity and the government" because "the types of relationships that may trigger the federal officer removal statute . . . are not limited to[] those established by contract or payment, employer-employee relationships, and agent-principal arrangements." *Doe I v. UPMC*, 2020 WL 4381675, at *3 (W.D. Pa. July 31, 2020) (citing *Watson*, 551 U.S. at 156). Instead, federal removal is appropriate when the relationship reflects an "effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior." *Def. Ass'n,* 790 F.3d at 468 (quotation omitted).

That standard is satisfied here, where U. S. Steel participated in an administrative process that "assisted" Commerce within the clear meaning of the federal officer removal test.[10] While imposing tariffs to promote national security, the President identified circumstances that might merit tariff exclusions, and directed Commerce to create and administer a process to consider exclusion requests. Proclamation 9705 ¶¶ 2, 4-5, 8; §§ 3-4; *see also* 19 U.S.C. § 1862(d) (listing factors to be weighed in establishing Section 232 tariffs); Notice ¶ 44 (outlining tariff policy more broadly). Neither Proclamation 9705 nor the implementing regulations suggested that Commerce should grant every exclusion request. Instead, before granting any request,

---

[9] The preference for removal under § 1442(a)(1) also led Congress to make orders remanding a case removed under this statute immediately appealable. 28 U.S.C. § 1447(d). Any decision remanding this case should, therefore, be held in abeyance to allow for a potential appeal.

[10] Preventing interference with federal policies is particularly important in the fields of foreign commerce and national security. *See* Notice ¶¶ 42-46. In these areas, it is of paramount importance that the federal government "speak with one voice." *Michelin Tire Corp. v. Wages*, 423 U.S. 276, 285 (1976); *see also Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 418 (2003).

Commerce was directed to determine (i) whether the product at issue was sufficiently available in the United States or (ii) whether there was a specific national security concern justifying an exclusion. Proclamation 9705 § 3. Commerce thus had to obtain information regarding domestic production capacity. Rather than using its employees to investigate, Commerce created an adversarial process in which domestic producers could voluntarily submit information about domestic capacity in response to specific product exclusion requests. *See* 83 Fed. Reg. 12111. In the absence of such voluntary participation by domestic producers, if Commerce did not wish to simply grant every exclusion request—thereby failing to satisfy its obligations under the Presidential Proclamation, undermining the federal goals of the tariffs, and threatening federal revenue—it would have been required to independently investigate domestic steel production to evaluate exclusion requests. Thus, Commerce enlisted domestic steel producers to complete tasks that the government "would have otherwise used its own agents to complete." *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 812 (3d Cir. 2016) (quotation omitted). No more is required to show that U. S. Steel "acted under" Commerce by submitting objections. *See id.* (rejecting "special burden" on corporations to show they acted under a federal officer).

Because they rest on an unduly narrow interpretation of the statute, Plaintiffs' arguments do nothing to undermine jurisdiction here. To start, Plaintiffs attack a strawman when they note that "U. S. Steel is not a federal officer" and that U. S. Steel was not "somehow transformed . . . into a federal officer" through its participation in the Section 232 process. Br. 14-15. U. S. Steel does not purport to be a federal officer, nor must it be a federal officer to remove this case under 28 U.S.C. § 1442(a)(1). The statute expressly applies to "any person acting under" a federal officer and is plainly not limited to officers themselves. 28 U.S.C. § 1442(a)(1).

Plaintiffs also miss the mark by suggesting federal officer removal is available only when

legal authority is delegated to the defendant.  Br. 15.  While delegation might be sufficient to establish federal officer removal, it is not required.  *See Watson*, 551 U.S. at 153-54 (approving of federal officer removal where "private contractors . . . help officers fulfill other basic governmental tasks" and perform jobs that "in the absence of a contract with a private firm, the Government itself would have had to perform").  Nor is there any requirement that a party have a contractual relationship with a federal agency to "act under" it.  *See UPMC*, 2020 WL 4381675, at *3.  All that is required is that the party voluntarily participated in a federal program established to assist a federal agency in the completion of its duties—as U. S. Steel did here by submitting relevant information regarding its production capacity within an administrative process created and administered by Commerce to allow it to evaluate tariff exclusion requests.

Moreover, Plaintiffs reverse the standard when they suggest federal officer removal is unavailable because "Commerce did not require U. S. Steel's participation" in the Section 232 process.  Br. 16.  Had Commerce mandated U. S. Steel's participation—*e.g.*, by requiring domestic producers to verify their production capacity—U. S. Steel's compliance with that requirement may not have constituted acting under a federal officer for purposes of removal. *Watson*, 551 U.S. at 153 ("A private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase 'acting under' a federal 'official.'").  Where a party *voluntarily* goes beyond regulatory requirements to assist an agency, the situation is different.  *See, e.g.*, *UPMC*, 2020 WL 4381675, at *3-6 (affirming federal officer removal based on voluntary participation in a federal program). Federal officer removal "protect[s] the Federal Government from [] interference with its operations," *Def. Ass'n*, 790 F.3d at 466, and thus is most appropriate where the risk of interference is greatest.  If a party has no obligation to assist the federal government, potential

state litigation may deter that party from offering assistance—directly threatening federal goals. Just so here. If domestic producers decline to participate in the Section 232 exclusion process for fear of state liability, the process Commerce established will be effectively destroyed.

Finally, Plaintiff's contention that U. S. Steel did not submit its objections "at the direction of official federal authority" under the "direct and detailed control" of Commerce simply blinkers reality. Br. 15. U. S. Steel submitted objections on forms created by Commerce, following procedures developed by Commerce, in response to questions posed by Commerce. *See* Notice ¶ 51. It thus defies belief to suggest, as Plaintiffs do, that "the government did not 'direct' or 'detail' the substance of U. S. Steel's objections." Br. 16. As explained above, Commerce's instructions to objectors are likely to be heavily contested—among other things, the parties dispute whether Commerce instructed U. S. Steel to object to individual (rather than aggregate) exclusion requests and based on substitutes. Thus, although it is not necessary "that the complained-of conduct *itself* was at the behest of a federal agency," *Def. Ass'n*, 790 F.3d at 470, the Section 232 process satisfies any requirement for federal direction.

In short, U. S. Steel did not simply comply with federal regulations, but voluntarily participated in the adversarial Section 232 regulatory product exclusion process designed and administered by Commerce to allow it to evaluate exclusion requests. Had domestic producers like U. S. Steel not participated in that process, Commerce would have either granted every request—wholly undermining the Section 232 tariffs—or been forced to use its own employees to investigate domestic capacity in response to each request to achieve its federal policy goals. The Complaint targets U. S. Steel's submissions to Commerce within this context, and thus U. S. Steel's conduct "acting under" a federal officer. Removal was proper on this basis.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiffs' Motion to Remand.

Dated: April 9, 2021

Respectfully submitted,

Leon F. DeJulius, Jr. (Pa. #90383)
Kelly C. Holt (Mass. #703505)*
JONES DAY
250 Vesey Street
New York, NY 10281
Tel: (212) 326-3939
Fax: (212) 755-7306
lfdejulius@jonesday.com
kholt@jonesday.com
*Admitted pro hac vice

 /s/  *Andrew R. Stanton*
Andrew R. Stanton (Pa. #93409)
Roy Powell (Pa. #37487)
Tarek Abdalla (Pa. #59924)
Simone DeJarnett (Pa. #321045)
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, PA 15219
Tel: (412) 391-3939
Fax: (412) 394-7959
astanton@jonesday.com
rapowell@jonesday.com
tabdalla@jonesday.com
sdejarnett@jonesday.com

*Counsel for Defendant U. S. Steel*

**CERTIFICATE OF SERVICE**

I hereby certify that this 9th day of April, 2021, I caused U. S. Steel's Memorandum of Law in Opposition to Plaintiffs' Motion to Remand to be filed over the Court's electronic filing system, which will cause service to be made on all counsel of record.

_/s/ Andrew R. Stanton_

Andrew R. Stanton
_Counsel for U. S. Steel_