# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NLMK PENNSYLVANIA, LLC and<br>NLMK INDIANA, LLC,<br><br>        Plaintiffs<br><br>vs.<br><br>UNITED STATES STEEL CORPORATION,<br><br>        Defendant. | Case No. 2:21-cv-00273-WSS<br><br>Hon. William S. Stickman<br><br>Electronically Filed |

## NLMK PENNSYLVANIA, LLC AND NLMK INDIANA, LLC'S
## REPLY MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION TO REMAND

William Pietragallo, II, Esq.
PA I.D No. 16413

PIETRAGALLO GORDON ALFANO
BOSICK & RASPANTI, LLP
Firm #834

One Oxford Centre, 38th Floor
Pittsburgh, PA 15219
Tel. (412) 263-2000
Fax. (412) 263-2001

Sanford Litvack, Esq.
(admitted *pro hac vice*)
Andrew L. Poplinger, Esq.
(admitted *pro hac vice*)
R. Matthew Burke, Esq.
(admitted *pro hac vice*)

CHAFFETZ LINDSEY LLP
1700 Broadway, 33rd Floor
New York, NY 10019
Tel. (212) 257-6960
Fax (212) 257-6950

*Attorneys for Plaintiffs NLMK
Pennsylvania, LLC and NLMK
Indiana, LLC*

# TABLE OF CONTENTS

|   |   | Page |
|---|---|---|
| I. | PRELIMINARY STATEMENT | 1 |
| II. | ARGUMENT | 2 |
| | A. This Court Does Not Have Jurisdiction Under the Federal Question Doctrine | 2 |
| |    1. This Case Does Not Present a Substantial Federal Question | 2 |
| |    2. The Balance of Interests in Resolving this Suit Lies with the Pennsylvania State Courts | 5 |
| | B. The APA Does Not Completely Preempt Pennsylvania Unfair Competition Law | 7 |
| | C. Voluntarily Providing "Assistance" Is Not Sufficient for Federal Officer Removal | 8 |
| III. | CONCLUSION | 11 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Barnes v. Trump*,
  2019 WL 1168429 (E.D. Wis. Mar. 13, 2019) ........................................................... 4

*Beneficial Nat'l Bank v. Anderson*,
  539 U.S. 1 (2003) ........................................................................................................ 8

*Benjamin v. JBS S.A.*,
  2021 WL 308133 (E.D. Pa. Jan. 29, 2021) ................................................................. 6

*Bracken v. Matgouranis*,
  296 F.3d 160 (3d Cir. 2002) ....................................................................................... 5

*In re Commonwealth's Mot. to Appoint Counsel Against or Directed to Def. Ass'n of Phila.*,
  790 F.3d 457 (3d Cir. 2015) ................................................................................. 9, 10

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,
  140 S. Ct. 1891 (2020) ............................................................................................... 7

*Doe I v. UPMC*,
  2020 WL 4381675 (W.D. Pa. July 31, 2020) ...................................................... 9, 10

*Fed. Trade Comm'n v. AbbVie Inc.*,
  976 F.3d 327 (3d Cir. 2020) ....................................................................................... 5

*Geisse v. Bayer HealthCare Pharms. Inc.*,
  2019 WL 1239854 (N.D. Cal. Mar. 18, 2019) ........................................................... 9

*Golden v. N.J. Inst. of Tech.*,
  934 F.3d 302 (3d Cir. 2019) ....................................................................................... 9

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,
  545 U.S. 308 (2005) ................................................................................................ 3, 5

*Gunn v. Minton*,
  568 U.S. 251 (2013) ................................................................................................ 3, 5

*Mahon v. W.C.A.B. (Expert Window Cleaning & State Workers' Ins. Fund)*,
  835 A.2d 420 (Pa. Commw. Ct. 2003) ...................................................................... 4

*Malofiy v. Cardiac Sci. Corp.*,
  2010 WL 4611821 (E.D. Pa. Nov. 15, 2010) ......................................................... 6, 7

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*,
   136 S. Ct. 1562 (2016)...................................................................................................6

*Papp v. Fore-Kast Sales Co., Inc.*,
   842 F.3d 805 (3d Cir. 2016)..........................................................................................9

*Pope v. Farland*,
   453 F. Supp. 3d 819 (E.D.N.C. 2020).........................................................................9

*Steel Valley Auth. v. Union Switch & Signal Div.*,
   809 F.2d 1006 (3d Cir. 1987)........................................................................................2

*Watson v. Philip Morris Cos.*,
   551 U.S. 142 (2007)................................................................................................9, 10

*Werner v. Plater-Zyberk*,
   799 A.2d 776 (Pa. Super. Ct. 2002)..............................................................................5

**Statutes**

5 U.S.C. § 702..........................................................................................................................7

28 U.S.C. § 1447......................................................................................................................1

Plaintiffs, NLMK Pennsylvania, LLC and NLMK Indiana, LLC (jointly, "NLMK") submit this Reply Memorandum of Law in support of their Motion, pursuant to 28 U.S.C. § 1447(c), to remand this matter to the Court of Common Pleas for Allegheny County, Pennsylvania.

## I. PRELIMINARY STATEMENT

U.S. Steel's effort to avoid remand seems to be predicated on the theory that, by repeating over and over again the same erroneous statement regarding the gravamen of this suit, it can somehow turn the dispute between these parties into a "federal case." But, the premise is flawed and the effort is futile. No matter how hard U.S. Steel tries to twist reality, the allegations in the Complaint make it perfectly clear that this suit is about one thing, and only one thing— U.S. Steel's tortious conduct in misrepresenting facts to the Department of Commerce ("Commerce").

Nonetheless, ignoring the allegations of the Complaint, U.S. Steel attempts to predicate jurisdiction on its claim that NLMK is attacking or challenging the decisions of Commerce and that the outcome of this case will somehow "reverse" those decisions. But, nothing could be further from the truth, as U.S. Steel knows. Indeed, nothing about this lawsuit will require Commerce, the federal government, or anyone other than U.S. Steel to take any action at all. As the Complaint makes crystal clear, the focus of this case is upon U.S. Steel's conduct and the harm it caused NLMK, in violation of Pennsylvania's unfair competition law.

The final determination in this case will, of course, impact U.S. Steel and NLMK, but it will have *no* impact whatsoever on Commerce, on any decision Commerce made or will make in the future, or upon any federal law or regulation. In fact, no matter what happens here, Commerce's decisions regarding NMLK's exclusion requests will stand and any future decisions on other exclusion requests will proceed in the normal course without reference to the decision in

1

this case.  In these circumstances, the law is clear:  the case presents a routine state law issue and remand is required.

## II. ARGUMENT

### A. This Court Does Not Have Jurisdiction Under the Federal Question Doctrine

#### 1. This Case Does Not Present a Substantial Federal Question

Contrary to U.S. Steel's assertions, this case is not about the "validity, construction and effect of [a] federal law" applied by Commerce.  U.S. Steel's Memo. of Law in Opp. to Pl's Mot. to Remand ("Opp."), Dkt. # 23, at 3-4.  Nor is it about issues U.S. Steel has dreamed up, like the "scope of [Commerce's] discretion" or whether "Commerce properly allow[ed] parties to object."  *Id.* at 4-6.  Instead, as NLMK has pointed out, it is about U.S. Steel and its submission of false information to Commerce, which damaged NLMK, in violation of Pennsylvania's unfair competition law.

Specifically, as the Complaint spells out in detail, NLMK will establish its unfair competition claim by proving that U.S. Steel knowingly and willfully misrepresented its ability to supply (for example) 10-inch slab[1] (NLMK's Complaint, Dkt. #1-2 ("Compl.") ¶¶ 16-18, 50-57, 62-63, 66, 68, 70-79), that this conduct was "contrary to honest industrial and commercial practices" under Pennsylvania law (*id.* ¶ 89), and that NLMK was damaged as a result (*id.* ¶¶ 81-85).  That is the crux of this case and that obviously does not present any substantial federal

---

[1] For reasons that are a mystery, U.S. Steel has chosen to argue on this motion that "it never represented it could produce 10-inch slabs."  Opp. at 5.  There are at least two problems with this assertion.  First, the Complaint pleads that it did make such a representation (Compl. ¶¶ 50-52), and the allegation must be taken as true on a motion to remand.  *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987).  Second, and perhaps more importantly, U.S. Steel did in fact expressly make that representation.  Exhibit A to the Declaration of Andrew R. Stanton (Dkt. # 1-3), which U.S. Steel relies upon, is of no help to it.  In fact, Exhibit A is totally irrelevant.  The document relates to NLMK's request for 8-inch slabs, not 10-inch slabs.  However, even putting aside the lack of truth of the claim, the argument does underscore NLMK's point that this case turns on a factual issue:  whether U.S. Steel made false representations to Commerce (as NLMK alleges) or whether U.S. Steel was truthful to Commerce (as U.S. Steel now claims).

question.  *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005); *Gunn v. Minton*, 568 U.S. 251, 258 (2013).

Nonetheless, and ignoring the teachings of *Grable* and *Gunn*, U.S. Steel claims that major federal issues are lurking in the background, which, it asserts, are of "substantial import to the federal system." Opp. at 6.[2]  But the truth is that there are no important federal issues lurking in the background or elsewhere.  This case truly is, as U.S. Steel put it, the classic example of a "run-of-the-mill state law case." *Id.* at 1.

In fact, the only issue that even comes close to presenting a federal question, let alone a substantial one, is the hypothetical question of whether Commerce would have ruled differently in the absence of U.S. Steel's materially false statements.  But, that issue is precisely the type of "hypothetical," "fact-bound and situation-specific," and "backward-looking" issue that the Supreme Court has held is insufficient to satisfy the substantiality requirement.  *See Gunn*, 568 U.S. at 261-63 (citing *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 701 (2006)).

Nevertheless, ignoring the controlling case law, U.S. Steel tries to elevate its hypothetical question into a significant federal issue by arguing that this case will "establish new legal standards for the Section 232 exclusion process" and that the case "directly implicates ongoing federal issues concerning interpretation and implementation of federal law." *See* Opp. at 6-7.  Again, that is simply not so, and, in fact, the argument defies logic.  Determining that U.S.

---

[2] Strangely, U.S. Steel tries to gild the lily by going even further and hypothesizing that this case "has the potential to control not only U.S. Steel's approach to future objections but also the behavior of [others]." Opp. at 6.  In invoking this argument, U.S. Steel seems oblivious to the fact that reinforcing the notion that a company must pay a price when it makes misrepresentations and causes damage is a good, not a bad, thing.  If this case causes U.S. Steel and others to make certain that they are putting forth facts, not misrepresentations, that would be a positive development.

3

Steel's misrepresentations injured NLMK in violation of Pennsylvania law would say absolutely nothing about how the Section 232 exclusion process should operate in the future or require any interpretation of federal law.[3] Rather, the precedential effect (if any) would go to Pennsylvania state law issues concerning causation between U.S. Steel's conduct and NLMK's damages. *See Mahon v. W.C.A.B. (Expert Window Cleaning & State Workers' Ins. Fund)*, 835 A.2d 420, 428 (Pa. Commw. Ct. 2003) ("[T]he standard for legal cause causation is not the 'but for' test applied to determine if a cause is a cause in fact, but the 'substantial factor' test.").

Finally, U.S. Steel's argument that it has proven substantiality because "an NLMK victory here would reverse that [Commerce] decision's real world effects" is confounding. Opp. at 8. U.S. Steel appears to be claiming, that if it were held liable for its own misrepresentations under Pennsylvania law, U.S. trade and national security interests would be undermined because the "costs of the tariffs" would allegedly be shifted to a "domestic steel producer [namely U.S. Steel]." *Id.* Putting aside the "Henny-Penny" nature of the argument, the claim fails on its face. Federal trade and national security policies have no interest in shielding a private party from the consequences of its wrongful action, especially if that action involves making misrepresentations to the government. Moreover, if U.S. Steel were ordered to pay NLMK damages, it would be for *all* the damage that U.S. Steel caused to NLMK's business, not just for the tariffs paid. Thus, such a ruling would not be passing on the tariffs, as U.S. Steel claims, but rather holding the

---

[3] Any purported precedent concerning application of the Section 232 regulations under a hypothetical factual scenario could not possibly bind Commerce or control Commerce's actions. The validity of Commerce's actions under the regulations is within the exclusive jurisdiction of the Court of International Trade. *See Barnes v. Trump*, 2019 WL 1168429, at *2-3 (E.D. Wis. Mar. 13, 2019) (dismissing suit alleging tariffs on steel and aluminum enacted by President Trump were unconstitutional for lack of subject matter jurisdiction because the "Court of International Trade has exclusive jurisdiction" over cases related to those tariffs). Decisions of Pennsylvania courts do not bind the Court of International Trade, and therefore cannot bind Commerce.

company responsible for what it did.[4] The fact that a portion of those damages relates to the tariffs that NLMK was forced to pay is irrelevant and certainly has nothing to do with establishing federal jurisdiction.

In sum, despite all the hyperbole, the reality is that nothing in NLMK's state law claim can or will "reverse" Commerce's decisions in the Section 232 process.[5] Those decisions have been made, and NLMK has already imported the slabs and paid the tariffs. Compl. ¶¶ 20, 81. Further, NLMK has already challenged Commerce's decisions in the correct forum (the Court of International Trade) and under the correct law (the Administrative Procedure Act (the "APA")), and that matter has been resolved. Now it is time for U.S. Steel to answer for its role.[6]

### 2. The Balance of Interests in Resolving this Suit Lies with the Pennsylvania State Courts

U.S. Steel has also failed to establish, as it must, that federal jurisdiction in this case would not improperly disrupt the constitutional balance between state and federal courts. There

---

[4] The damages NLMK seeks will have the same goal as damages in any tort action—putting NLMK "in a position as near as possible to [its] position prior to the acts that comprise the tort" by "compensat[ing] [it], at the expense of the wrongdoer, for the damage incurred." *See Werner v. Plater-Zyberk*, 799 A.2d 776, 784 (Pa. Super. Ct. 2002).

[5] That fact is precisely what distinguished *Grable*, from *Gunn*. In *Grable*, there was federal jurisdiction because the plaintiff sought to undo a federal act, namely the IRS's seizure of certain property, in state court. 545 U.S at 310. That directly put in question the IRS's "strong interest" in its ability to seize property to assure the "prompt and certain collection of delinquent taxes." *Id.* at 315. In *Gunn*, by contrast, the plaintiff sought a determination that his attorney had committed state law malpractice by failing to assert a legal argument in a federal case concerning the validity of his patent. 568 U.S. at 254-56. The Supreme Court in *Gunn* found no substantial federal interest because, unlike in *Grable*, the state court was not asked to invalidate, validate, or change the federal patent decision. *Id.* at 261, 264. In other words, what made *Gunn* "poles apart" from *Grable* was that, in *Gunn*, "[n]o matter how the state courts resolve that hypothetical 'case within a case,' it w[ould] not change the real-world result" of the prior federal action. *Id*. at 262. The same is true here.

[6] In a last ditch effort to create federal jurisdiction, U.S. Steel throws out a potential *Noerr-Pennington* defense as the basis for jurisdiction in this Court. Opp. at 9-10. This is, as NLMK has pointed out, futile because an affirmative defense cannot create federal jurisdiction. *Bracken v. Matgouranis*, 296 F.3d 160, 163-64 (3d Cir. 2002). Further, U.S. Steel fails to address NLMK's primary argument: Even if *Noerr-Pennington* were raised, that defense would not present a substantial issue of federal law under *Gunn* and Third Circuit precedent in *Federal Trade Commission v. AbbVie Inc*., 976 F.3d 327, 349-50 (3d Cir. 2020).

can be no denying the fact that Pennsylvania courts have a strong interest in adjudicating an unfair competition claim under Pennsylvania law in a suit between two Pennsylvania companies concerning acts, many of which occurred and/or originated in Pennsylvania. *Benjamin v. JBS S.A.*, 2021 WL 308133, at *5 (E.D. Pa. Jan. 29, 2021) (explaining that a dispute between Pennsylvania citizens presented "'run-of-the-mill state tort' claims" that "are well within the purview of state court"). Preserving and protecting Pennsylvania's jurisdiction to decide issues of its own state law are essential to "maintain[ing] the constitutional balance between state and federal judiciaries." *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 136 S. Ct. 1562, 1573 (2016).

In an attempt to counter that strong public policy, U.S. Steel strives to create the impression that somehow our nation's security is at stake in this case and hence this Court is the proper forum to assess its conduct. Opp. at 11. But, national security is not an issue in this litigation, and the authority U.S. Steel cites stands only for the unremarkable (and irrelevant) proposition that the federal government has an interest in national security and in regulating international trade. *Id.* That is true, but, unfortunately for U.S. Steel, it has nothing to do with this case.

Likewise, U.S. Steel's reliance on *Buckman Co. v. Plaintiff's Legal Committee* to recast NLMK's claim as an attempt to "police fraud" against Commerce is also off the mark. *Id.* (citing 531 U.S. 341 (2001)). NLMK is not seeking to "police fraud" against Commerce; it is simply seeking to hold U.S. Steel accountable for the damage it did to NLMK. In fact, it is the finality of the action with Commerce that gives rise to the claim for damages based upon U.S. Steel's misrepresentations. Furthermore, it is important to note that *Buckman*, in any event, is totally inapposite because it "did not address the question of whether alleged fraud on [a federal

6

agency] created federal question jurisdiction," and it therefore "offers no support" to U.S. Steel's attempt to remove. *Malofiy v. Cardiac Sci. Corp.*, 2010 WL 4611821, at *4 (E.D. Pa. Nov. 15, 2010).

> **B.** **The APA Does Not Completely Preempt Pennsylvania Unfair Competition Law**

U.S. Steel's next argument, that there has been complete federal preemption, is premised on the notion that, because NLMK is seeking, as part of its damages, the tariffs it paid as a result of U.S. Steel's misrepresentations, the APA provides the exclusive remedy for NLMK.[7] Opp. at 11-14. That is wrong both as a matter of fact and as a matter of law.

First, as a matter of fact, the Complaint plainly alleges that in addition to the tariffs it had to pay, NLMK was damaged by having (i) its ability to compete for new business impeded, (ii) its costs artificially inflated, (iii) to shelve a planned capital investment of more than $680 million to enable it to better compete, and (iv) to cancel orders with customers. Compl. ¶¶ 81-85. Since U.S. Steel cannot claim these damages are compensable from Commerce, it has chosen simply to ignore them. But, the claim for these damages destroys the argument that NLMK is merely seeking to "vindicate" an entitlement to "tariff exclusions." *See* Opp. at 12. What NLMK is seeking is to vindicate its right to free and fair competition under Pennsylvania law and its right to be compensated for the damages it sustained. Nothing more and nothing less.

Second, as a matter of law, the APA provides absolutely no remedy for the competitive

---

[7] As the Court knows, the APA "sets forth the procedures by which federal agencies are accountable to the public and their actions subject to review by the courts." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1905 (2020) (citing *Franklin v. Massachusetts*, 505 U.S. 788 (1992); *see also* 5 U.S.C. § 702 ("A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. . . . The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States[.]). The Act focuses solely on the federal agency and has no application to a non-governmental entity, such as U.S. Steel.

7

harm specified in the Complaint. *See* NLMK's Memo. of Law in Support of Its Mot. to Remand, Dkt. # 19, at 12-14. U.S. Steel concedes that the APA provides no right of action against it. Opp. at 13. And U.S. Steel does not even try to argue that NLMK could sue Commerce under the APA for the competitive, marketplace damages NLMK suffered as a result of U.S. Steel's tortious conduct. Instead, U.S. Steel argues that, because the APA does not provide a remedy for harm caused by a third party (here, U.S. Steel), the APA must be read as an immunity statute for that third party—a virtual "get out of jail free" card. *See id*. Thus, if U.S. Steel could have its way, we would be in a world in which NLMK could only sue under the APA, it could only sue Commerce, and U.S. Steel could walk away scot free of any responsibility for its misconduct. But, that is not the real world and U.S. Steel cannot so easily avoid liability.

Finally, to the extent U.S. Steel's wrongful conduct caused NLMK to pay tariffs it should not have had to pay, there can be no doubt that U.S. Steel would be liable for any tariff amounts NLMK did not otherwise recover. The APA provides a means for challenging Commerce's decisions, which NLMK did, and that case has now been resolved—but that does not close the book on damages caused by others.[8] That is what state laws are for, and U.S. Steel's suggestion to the contrary is untenable. *See id.*

### C. Voluntarily Providing "Assistance" Is Not Sufficient for Federal Officer Removal

Contrary to U.S. Steel's claim, the test for whether a party "acted under" color of a federal officer mantle for purposes of federal jurisdiction is not simply whether the party

---

[8] In truth, the whole damages issue is a red herring with respect to preemption. The operative question regarding preemption is whether a federal law provides an exclusive cause of action for a plaintiff's claims against a defendant. *See Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003). The type or amount of damages to which NLMK has claimed in this case has no bearing on that question. If U.S. Steel wishes to contest NLMK's damages theory, it is free to do so on the merits during the appropriate phase of the litigation—but such an argument has no place here.

"voluntarily participated in a federal program established to assist a federal agency in the completion of its duties." *Id.* at 19. Rather, under *Watson v. Philip Morris Cos.* and its progeny, there must be a "special" relationship between the federal agency and the private party in order to claim federal officer status. 551 U.S. 142, 157 (2007) (emphasis added); *see, e.g.*, *Geisse v. Bayer HealthCare Pharms. Inc.*, 2019 WL 1239854, at *5 (N.D. Cal. Mar. 18, 2019) (holding that there was no federal officer jurisdiction where participation on certain FDA advisory committees "was entirely free and voluntary" and not the "product of direction or compulsion by the FDA"). In short, a "special relationship" of some sort, which is missing here, is essential if an entity wishes to wrap itself in federal garb, as U.S. Steel is attempting to do.

U.S. Steel's argument that it need not demonstrate a formal contractual relationship to fall within the statute is correct as far as it goes, but it does not go far enough. Opp. at 19. Whether there is a contract, or not, is not the point. The critical inquiry is whether there is a sufficiently close relationship, *marked by a delegation of authority*. *See Watson*, 551 U.S. at 156-57; *see also Pope v. Farland*, 453 F. Supp. 3d 819, 824 (E.D.N.C. 2020) ("Farland's voluntary statement to the USDA investigator did not require the investigator to delegate government authority to Farland."). Although U.S. Steel attempts to contest the need for such authority, *none* of the cases cited by U.S. Steel supports a contrary view. And, none of them involved merely "an effort to assist, or to help carry out" governmental tasks, as U.S. Steel alleges. *See* Opp. at 17. They all included a "special" relationship that involved the delegation of authority.[9] For example, the court in *Doe I v. UPMC*, upon which U.S. Steel heavily relies,

---

[9] *See Golden v. N.J. Inst. of Tech.*, 934 F.3d 302, 310 (3d Cir. 2019) (involving a school directed by the Federal Bureau of Investigation to withhold certain documents); *Papp v. Fore-Kast Sales Co., Inc.*, 842 F.3d 805, 812-13 (3d Cir. 2016) (concerning actions a "federal contractor" took while "working under a federal contract," which the court described as an "archetypal case"); *In re Commonwealth's Mot. to Appoint Counsel Against or Directed to Def. Ass'n of Phila.*, 790 F.3d 457, 469 (3d Cir. 2015) (involving the Federal Community Defender, an entity created by federal law, which was mandated to "implement[] . . . the aims and purposes of the [relevant federal law]," and, "[a]s a condition of receiving federal grant money, [to] maintain detailed financial records, submit an

expressly noted the centrality of this special relationship to its holding: "The fact that the government offers payment in exchange for UPMC's voluntary participation in implementing a nationwide EHR network shows the relationship between UPMC and DHHS is less like the regulator-regulated relationship in *Watson* and more like the government contractor relationship in *Papp*." 2020 WL 4381675, at *6 (W.D. Pa. July 31, 2020).

Applying that teaching here, it is plain that U.S Steel's actions lack the hallmark of any relationship, much less a "special" one, sufficient to create federal jurisdiction. The voluntary participation in the Section 232 process by U.S. Steel and others did not automatically create an army of "federal officers." Quite to the contrary, it created, as U.S. Steel admits, an adversarial process in which Commerce did not delegate decision-making, but rather retained responsibility for tariff exclusion determinations. Opp. at 17-18.

In a vain attempt to demonstrate that it was under "direct and detailed control" of Commerce, U.S. Steel points to the "forms created by Commerce, following procedures developed by Commerce, in response to questions posed by Commerce." Opp. at 20. But this, of course, only establishes that U.S. Steel volunteered to become subject to Commerce's rules and regulations relating to the Section 232 process, which is plainly insufficient for purposes of federal officer removal. *Watson*, 551 U.S. at 157. While Commerce certainly wanted the truth, it did not instruct U.S. Steel, or any objector, on what to say or what to represent in support of its objections: that was left to U.S Steel and the others.

In sum, U.S. Steel's arguments simply cannot stand in the face of *Watson* and its progeny. As such, it is clear that federal officer removal jurisdiction does not exist.

---

annual report of activities and expected caseload, and return unexpended balances to the [Administrative Office of the United States]"); *Doe I v. UPMC*, 2020 WL 4381675, at *5-6 (W.D. Pa. July 31, 2020) (considering a hospital "participat[ing] in the Meaningful Use Program," whereby participants who met benchmarks for "meaningful use" of certain technology were eligible to receive payments from the Department of Health and Human Services).

**III. CONCLUSION**

This is a state law case involving state law questions. The "gravamen" of the dispute is whether U.S. Steel misrepresented facts to deprive NLMK of its right to fair business practices under Pennsylvania state law. This case will be binding on the parties to the suit but will have no impact on Commerce, any government agency, any federal statute, or the federal system as a whole. That U.S. Steel chose a federal venue for its misconduct does not turn this dispute into a federal case. Accordingly, and for the reasons set forth herein and in its moving brief, NLMK respectfully requests that this case be remanded to the state court, where it belongs.

Dated: April 16, 2021

                Respectfully submitted,

                */s/ William Pietragallo, II*
                William Pietragallo, II (PA I.D. 16413)

                PIETRAGALLO GORDON ALFANO BOSICK
                & RASPANTI, LLP
                Firm #834

                One Oxford Centre, 38th Floor
                Pittsburgh, PA 15219
                Tel. (412) 263-2000
                Fax. (412) 263-2001
                wp@pietragallo.com

                */s/ Sanford Litvack*
                Sanford Litvack, Esq.
                (admitted *pro hac vice*)
                Andrew L. Poplinger, Esq.
                (admitted *pro hac vice*)
                R. Matthew Burke, Esq.
                (admitted *pro hac vice*)

                CHAFFETZ LINDSEY LLP

                1700 Broadway, 33rd Floor
                New York, NY 10019
                Tel. (212) 257-6960
                Fax (212) 257-6950
                s.litvack@chaffetzlindsey.com

                *Attorneys for Plaintiffs NLMK*
                *Pennsylvania, LLC, and NLMK Indiana,*
                *LLC*