# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NLMK PENNSYLVANIA, LLC and<br>NLMK INDIANA, LLC,<br><br>       *Plaintiffs*,<br><br>    v.<br><br>UNITED STATES STEEL CORPORATION,<br><br>       *Defendant*. | Case No. 2:21-cv-00273-WSS<br><br>Hon. William S. Stickman<br><br>Electronically Filed |

---

## DEFENDANT UNITED STATES STEEL CORPORATION'S
## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Leon F. DeJulius, Jr. (Pa. #90383)
Kelly C. Holt (Mass. #703505)*
JONES DAY
250 Vesey Street
New York, NY 10281
Tel: (212) 326-3939
Fax: (212) 755-7306
lfdejulius@jonesday.com
kholt@jonesday.com
*Admitted pro hac vice*

Andrew R. Stanton (Pa. #93409)
Roy Powell (Pa. #37487)
Tarek Abdalla (Pa. #59924)
Simone DeJarnett (Pa. #321045)
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, PA 15219
Tel: (412) 391-3939
Fax: (412) 394-7959
astanton@jonesday.com
rapowell@jonesday.com
tabdalla@jonesday.com
sdejarnett@jonesday.com

*Counsel for Defendant U. S. Steel*

**TABLE OF CONTENTS**

Page

INTRODUCTION ....................................................................................................... 1

BACKGROUND ........................................................................................................ 1

LEGAL STANDARD ................................................................................................. 5

ARGUMENT ............................................................................................................. 5

I.      NLMK'S COMPLAINT WOULD REQUIRE THIS COURT TO CREATE A NEW TYPE OF UNFAIR COMPETITION CLAIM UNDER PENNSYLVANIA LAW ................................................................................. 5

II.     NLMK'S CLAIM FOR PENNSYLVANIA COMMON-LAW UNFAIR COMPETITION IS BARRED BY FEDERAL LAW .......................................... 7

III.    U. S. STEEL HAD A RIGHT TO PARTICIPATE AS IT DID IN THE SECTION 232 PROCESS UNDER BOTH FEDERAL AND STATE LAW ..................................................................................................... 12

      A.     U. S. Steel Is Entitled To Federal Noerr-Pennington Immunity .............. 12

      B.     Under Pennsylvania Law, U. S. Steel's Statements During The Section 232 Objection Process Are Absolutely Privileged ..................... 15

IV.    NLMK FAILS TO PLEAD ANY PLAUSIBLE FRAUD OR MISREPRESENTATION BY U. S. STEEL ........................................................ 16

      A.     NLMK Fails To Plead Any Fraud About The Volume Of Steel Slab ............................................................................................... 16

      B.     NLMK Fails To Plead Any Fraud About The Dimensions Of Steel Slab ............................................................................................... 18

CONCLUSION ......................................................................................................... 20

# TABLE OF AUTHORITIES

Page

CASES

*Armstrong Surgical Center, Inc. v. Armstrong Cty. Mem. Hosp.*,
185 F.3d 154 (3d Cir. 1999)........................................................................12, 13, 14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................................5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................................4

*Buckman Co. v. Plaintiffs' Legal Committee*,
531 U.S. 341 (2001)................................................................................................9

*California Motor Transp. Co. v. Trucking Unlimited*,
404 U.S. 508 (1972)..............................................................................................12

*Caribou Four Corners Inc. v. American Oil Co.*,
628 F. Supp. 363 (D. Utah 1985)...........................................................................8

*Carl A. Colteryahn Dairy, Inc. v. Schneider Dairy*,
203 A.2d 469 (Pa. 1964).........................................................................................6

*Checker Cab Philadelphia, Inc. v. Uber Techs., Inc.*,
689 F. App'x 707 (3d Cir. 2017) .......................................................................6, 7

*Cheminor Drugs, Ltd. v. Ethyl Corp.*,
168 F.3d 119 (3d Cir. 1999).............................................................................11, 12

*Chicago & NW Transp. Co. v. Kalo Brick & Tile Co.*,
450 U.S. 311 (1981)..................................................................................... passim

*Christidis v. First Pennsylvania Mortg. Tr.*,
717 F.2d 96 (3d Cir. 1983)...................................................................................17

*City of Tacoma v. Taxpayers of Tacoma*,
357 U.S. 320 (1958)..............................................................................................11

*Columbia v. Omni Outdoor Advertising, Inc.*,
499 U.S. 365 (1991)..............................................................................................13

*Crosby v. Nat'l Foreign Trade Council*,
530 U.S. 363 (2000)............................................................................10

*Doe v. Wyoming Valley Health Care Sys., Inc.*,
987 A.2d 758 (Pa. 2009) ...................................................................14

*E. R. R. Presidents Conf. v. Noerr Motor Freight, Inc.*,
365 U.S. 127 (1961)...........................................................................12

*Fan v. StoneMor Partners LP*,
927 F.3d 710 (3d Cir. 2019)........................................................17, 20

*Frompovicz v. Niagara Bottling, LLC*,
313 F. Supp. 3d 603 (E.D. Pa. 2018) ..................................................9

*Halifax Cty., Va. v. Lever*,
718 F.2d 649 (4th Cir. 1983) .............................................................8

*Harr v. Prudential Fed. Sav. & Loan Ass'n*,
557 F.2d 751 (10th Cir. 1977) ..........................................................8

*In re Ins. Brokerage Antitrust Litig.*,
618 F.3d 300 (3d Cir. 2010)...........................................................15

*In re Rockefeller Ctr. Properties, Inc. Sec. Litig.*,
311 F.3d 198 (3d Cir. 2002)...........................................................16

*In re Thomas*,
246 B.R. 500 (E.D. Pa. 2000) ...........................................................6

*Mayo v. United States*,
319 U.S. 441 (1943)............................................................................7

*Milliner v. Enck*,
709 A.2d 417 (Pa. Super. Ct. 1998) .............................................14, 15

*NLMK v. United States*,
Case No. 20-00050, Dkt. 63 (C.I.T. Nov. 12, 2020)........................11

*Orelski v. Pearson*,
337 F. Supp. 2d 695 (W.D. Pa. 2004)...........................................9, 10

*Peek v. Whittaker*,
2014 WL 2154965 (W.D. Pa. May 22, 2014)....................................6

*Pennsylvania State Univ. v. Univ. Orthopedics, Ltd.*,
    706 A.2d 863 (Pa. Super. Ct. 1998) ........................................................6

*Pension Ben. Guar. Corp. v. White Consol. Industries, Inc.*,
    998 F.2d 1192 (3d Cir. 1993) ..................................................2, 5, 16

*Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*,
    508 U.S. 49 (1993) ...............................................................................14

*Silver v. Mendel*,
    894 F.2d 598 (3d Cir. 1990) ................................................................15

*Trilog. Assocs., Inc. v. Famularo*,
    314 A.2d 287 (Pa. 1974) ........................................................................6

*USX Corp. v. Adriatic Ins. Co.*,
    99 F. Supp. 2d 593 (W.D. Pa. 2000), *aff'd*, 345 F.3d 190 (3d Cir. 2003) ................5

**STATUTES**

5 U.S.C. § 702 ................................................................................................11

28 U.S.C. § 2631(i) ........................................................................................11

**OTHER AUTHORITIES**

15 C.F.R. pt. 705, Supp. 1(c)(2) ....................................................................11

83 Fed. Reg. 12107, 12110 ............................................................................11

Federal Rule of Civil Procedure 9(b) ...................................................... passim

Federal Rule of Civil Procedure 12(b)(6) ...................................................4, 20

# INTRODUCTION

The U.S. arms of Russian steel conglomerate NLMK brought this case in an attempt to intimidate and silence the American steel industry, collaterally attack the decisions of the United States Department of Commerce ("Commerce"), and re-litigate Commerce's application of a Presidential Proclamation imposing tariffs to protect the national security of the United States. NLMK's Complaint is inadequate at every level: It seeks to create a new type of unfair competition claim under Pennsylvania law, which this Court should decline to do. Even if NLMK's claim had a viable legal framework, as this Court recognized, any proof of causation by NLMK would necessarily entail second-guessing Commerce's decisions and substituting the judgment of a jury for that of Commerce, and consequently NLMK's claim is barred by federal law. Likewise, it is predicated on alleged U. S. Steel conduct that is protected under both federal *Noerr-Pennington* immunity and Pennsylvania judicial privilege. Finally, NLMK's claim cannot remotely satisfy federal pleading standards, because NLMK has failed to plausibly allege any misrepresentations, much less meet the heightened standards of Federal Rule of Civil Procedure 9(b), particularly in light of the publicly-available record of proceedings before Commerce. Defendant U. S. Steel respectfully requests that the Court dismiss this case with prejudice.

# BACKGROUND

As the Court is well aware, this case concerns NLMK's and U. S. Steel's participation in the process Commerce established to evaluate requests for exclusions from Section 232 tariffs imposed on certain steel imports. (*See* Dkt. 34 at 3-14.) Specifically, NLMK alleges that U. S. Steel misled Commerce into denying NLMK's exclusion requests, forcing NLMK to pay additional tariffs. (Dkt. 34 at 12-14.)

According to the Complaint, "[b]etween 2018 and the [time of filing the Complaint], NLMK submitted 162 requests for exclusions from the Section 232 tariffs for semi-finished steel slab." *See* Dkt. 1-2 ("Compl.") at ¶ 13. Of these, 127 requests were for 10-inch steel slabs, and 35 were for 8-inch steel slabs. Compl. ¶¶ 37-40. U. S. Steel objected to each of NLMK's exclusion requests, Compl. ¶ 36, as did at least one of Nucor and AK Steel. While certain details—such as dates, the volume of steel NLMK sought an exclusion for, and the format requestors and objectors were required by Commerce to use—vary across exclusion requests, the requests and objections are materially identical for purposes of this case.

Exclusion Request 111734 is representative.[1] (*See* Ex. A, Exclusion Request 111734.) NLMK submitted Request 111734 on July 15, 2020, seeking tariff exclusions for 662,705 kilograms, or slightly over 662 metric tons, of steel slab with thickness of 250mm. (*Id.*) NLMK asserted that "[t]here is no substitute for this product," in part because NLMK claimed to be incapable of using slabs with different dimensions to make the particular hot rolled coil sizes its customers required. (*Id.*)

U. S. Steel objected, explaining that "All of U. S. Steel's steelmaking facilities (i.e., blast furnaces) are capable of producing slabs with the requested chemical composition. U. S. Steel can continuously cast steel slabs that are 8.00, 8.75, 9.11, 9.60, or 12.00 inches thick and up to 480 inches long." (*See* Ex. B, U. S. Steel Objection to Exclusion Request 111734.) In response to the question, "What percentage of the total product tonnage requirement covered under the

---

[1] Commerce maintains a searchable public database of exclusion requests and related materials, which is available at https://232app.azurewebsites.net/steelalum. These materials are judicially noticeable as matters of public record, in addition to being incorporated by reference in NLMK's Complaint. *Cf. Pension Ben. Guar. Corp. v. White Consol. Industries, Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

Exclusion Request that is the subject of this Objection Filing can your organization manufacture at its U.S. plants on a timely basis?", U. S. Steel responded, "100%".  (*Id*.)

In a narrative attachment to the objection form, U. S. Steel explained that while "no U.S. steelmakers currently cast slab that is precisely 250 millimeters thick," "U. S. Steel is able and willing to immediately provide NLMK with semi-finished steel slab that [is] less than 18 millimeters thinner than the requested slab," and that this "marginal difference in thickness" would not impair NLMK's ability to use the slab.  (*Id*.)  In support, U. S. Steel explained that NLMK routinely "relies on slab inputs that are between 200 to 300 millimeters thick" and had "purchased significant volumes of slab that is 231 to 244 millimeters . . . thick from U. S. Steel for use in its Pennsylvania rolling facility"  (*Id*.).

In addition to U. S. Steel's objection, Commerce also received objections from both Nucor and AK Steel.  (*See* Ex. C, Nucor Objection to Exclusion Request 111734; Ex. D, AK Steel Objection to Exclusion Request 111734.)

NLMK filed a rebuttal.  (*See* Ex. E, NLMK Rebuttal and Attachment to U. S. Steel Objection to Exclusion Request 111734.)  NLMK did not dispute that U. S. Steel could produce steel slabs with the dimensions it listed in its objection, but instead reiterated that "U. S. Steel cannot produce 250 mm thick steel slabs."  (*Id*.)  NLMK thus argued that U. S. Steel's slab was sufficient to satisfy only 6 percent of its customer's needs, and that U. S. Steel's representation that it could provide 100% was therefore "factually incorrect."  (*Id*.)  Further, NLMK argued that U. S. Steel's objection was "false and misleading" because "U. S. Steel cannot and will not sell NLMK steel slab it needs in the quantities it needs."  (*Id*.)

U. S. Steel then filed a surrebuttal.  (*See* Ex. F, U. S. Steel Surrebuttal to Exclusion Request 111734.)  U. S. Steel confirmed that "In its objection, U. S. Steel publicly certified that

it could immediately supply NLMK with the requested quantity and quality (i.e., chemistry) of slab in a similar thickness," and noted that despite filing a rebuttal, "NLMK has not provided any actual evidence that U. S. Steel's products are unsuitable substitutes." (*Id.*) Additionally, in a confidential attachment to the surrebuttal, U. S. Steel provided a detailed breakdown of both its total capacity and its current utilization in support of its argument that it had adequate available capacity to fulfill NLMK's request. (*See* Ex. G, U. S. Steel Confidential Business Information Submission.)

Commerce denied NLMK's exclusion request. (*See* Ex. H, BIS Decision Document – Steel Section 232 Remedy Exclusion Request 111734.) As Commerce explained, it had "considered the evidence provided, including in the exclusion request as well as any applicable objection filings and its report to the President of January 11, 2018, has solicited and taken into account analysis provided by the International Trade Administration (ITA), and assessed other interagency comments as applicable." (*Id.*) Commerce further explained that ITA "recommends denying the request for an exclusion," and attached ITA's recommendation document. (*Id.*) The ITA recommendation reflects that Commerce appointed a Subject Matter Expert (SME) to evaluate the facts underlying the exclusion request, as well as NLMK's assertion that " U.S. Steel's products are too thin to meet the required slab weights at lengths that will fit in the NLMK facility." (*Id.*) ITA, however, rejected NLMK's position, noting that the "SME found that the smaller slabs can make coils, albeit shorter ones, that can make the end products. Based on technical factors, the SME found the AK Steel and U. S. Steel objection offerings to be suitable substitutes" for NLMK's requested product. (*Id.*)

## LEGAL STANDARD

A case must be dismissed under Rule 12(b)(6) "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Allegations that do not raise the right to relief "above the speculative level" are inadequate, *id.* at 555, 557, and legal conclusions and conclusory factual allegations are not entitled to an assumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681 (2009) (the pleading standard "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation"). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

When determining whether the Complaint is sufficient, the Court can properly consider "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record," as well as "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document[s]." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

## ARGUMENT

### I. NLMK'S COMPLAINT WOULD REQUIRE THIS COURT TO CREATE A NEW TYPE OF UNFAIR COMPETITION CLAIM UNDER PENNSYLVANIA LAW.

NLMK's Complaint asserts a single count for common law unfair competition. As this Court recognized, "Pennsylvania's law of unfair competition is still in a state of development" and "an unsettled question of state law remains as to the elements of the state tort." (Dkt. No. 34 at 18-19.) NLMK's Complaint attempts to expand the law well past any grey areas into uncharted territory. Specifically, NLMK pleads an entirely unrecognized category of "unfair competition" – the claim is based on alleged misrepresentations about a defendant's own product to a government regulator, resulting in injury to the plaintiff caused directly by the regulator's

actions, but allegedly also proximately caused by the defendant. No Pennsylvania court has ever

countenanced such a convoluted and attenuated theory of common law unfair competition, and

this Court should not create new Pennsylvania common law by doing so now.

Unfair competition may not be used as "a virtual catch-all for any form of wrongful

business conduct." *USX Corp. v. Adriatic Ins. Co.*, 99 F. Supp. 2d 593, 619 (W.D. Pa. 2000),

*aff'd*, 345 F.3d 190 (3d Cir. 2003). Historically, the common-law tort of unfair competition was

customarily defined by "'passing off' the goods of one for that of another." *Pennsylvania State

Univ. v. Univ. Orthopedics, Ltd.*, 706 A.2d 863, 870 (Pa. Super. Ct. 1998) (quotation marks

omitted). Although Pennsylvania courts have since broadened the scope of unfair competition

beyond the strict bounds of the historical tort, passing off remains "the gist of the action." *Id*.

Thus, unfair competition "contextually is limited to claims designed to protect a business from

another's misappropriation of its business organization or its expenditure of labor, skill, or

money." *Peek v. Whittaker*, 2014 WL 2154965, at *10 (W.D. Pa. May 22, 2014) (quotation

marks and citation omitted).

As this history suggests, Pennsylvania courts have recognized unfair competition only

where the facts share some relationship to the historical tort of passing off. For example,

Pennsylvania courts recognize unfair competition rooted in misuse of confidential information or

trade secrets—a straightforward example of misappropriating the property or labor of another.

*See, e.g., Trilog. Assocs., Inc. v. Famularo*, 314 A.2d 287, 291-93 (Pa. 1974). And Pennsylvania

courts have found unfair competition based on false and defamatory claims about a competitor,

which similarly benefit the speaker only by unfairly eroding the competitor's trademarks and

goodwill. *See, e.g., Carl A. Colteryahn Dairy, Inc. v. Schneider Dairy*, 203 A.2d 469, 473 (Pa.

1964); *see also In re Thomas*, 246 B.R. 500, 505 (E.D. Pa. 2000) ("Under Pennsylvania law,

goodwill is intangible property.").  As these cases reflect, "*all* unfair competition claims

recognized by Pennsylvania courts involve some accusation of 'passing off' of one's own

product as another, or a false or dishonest statement [about a competitor], or tortious interference

with contract, or intellectual property theft."  *Checker Cab Philadelphia, Inc. v. Uber Techs.,

Inc.*, 689 F. App'x 707, 709 & n.4 (3d Cir. 2017) (emphasis in original).

Nothing like that is alleged here.  At best, NLMK has alleged that U. S. Steel provided

inaccurate information about its own steel production capabilities, and that Commerce (a third

party government regulator) denied NLMK relief from tariffs as a result.  No Pennsylvania court

has suggested, let alone held, that such statements rise to the level of tortious unfair competition.

Rather, as in *Checker Cab*, NLMK's claim "in no way resembles the unfair competition claims

recognized by Pennsylvania courts." *Id.* at 710.  This Court should decline to announce a new

category of common law unfair competition claims, and the Complaint should be dismissed for

that reason.

## II.     NLMK'S CLAIM FOR PENNSYLVANIA COMMON-LAW UNFAIR COMPETITION IS BARRED BY FEDERAL LAW.

Even if NLMK's novel theory of unfair competition were otherwise viable, federal law

mandates dismissal because, as this Court already has recognized, any showing of causation by

NLMK necessarily entails second-guessing Commerce's decision to deny NLMK's exclusion

requests.  In particular, "a substantial—and critical—portion of the proceedings would

essentially be focused on. . . second-guessing [Commerce's] decision by examining the weight it

gave to U. S. Steel's alleged misrepresentations and the other factors it was required to

consider."  (Dkt. 34 at 25-26.)   Indeed, resolving NLMK's claim would require "a probing

examination of the unsettled question of *why* the Department of Commerce denied NLMK's

exclusion request." (*Id.* at 25.)  And if NLMK were to prevail, any award of damages

necessarily would "vitiate the Secretary's prior decisions" on what the Court properly characterized as an issue "that is vital to our country's national security." (*Id.* at 26.)

It is beyond dispute that "the activities of the Federal Government are free from regulation by any state," *Mayo v. United States*, 319 U.S. 441, 445 (1943), and state laws cannot be used to collaterally attack the decisions of federal agencies. *See, e.g., Chicago & NW Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 324 (1981). Where a plaintiff's state-law action "represents little more than an attempt by a disappointed [litigant] to gain from the [state] courts the relief it was denied by the [federal agency]," the claim must be rejected. *Id.* By seeking to second-guess the tariffs imposed as a result of Commerce's denial of its exclusion requests, NLMK necessarily seeks "to gain" through this litigation "the relief it was denied" by Commerce.

No matter how NLMK may choose to characterize this litigation, to prevail on its unfair competition claim, ". . . NLMK would be required to prove not only that there were false representations made by U. S. Steel to the Department of Commerce but that those false representations proximately caused the Department to reject NLMK's exclusion request." (Dkt. 34 at 20-21.) That NLMK may try to put a gloss on this exercise in second-guessing Commerce by emphasizing U. S. Steel's alleged conduct in the 232 proceedings, or Commerce's absence as a party to this litigation, does not change the outcome. "This attack cannot be changed in its substance by a [state-law] gloss in what is really a collateral proceeding directed to derivative matters or consequences. The fact that the complaint is directed to such derivative consequences . . . indicates that it is a collateral attack." *Harr v. Prudential Fed. Sav. & Loan Ass'n*, 557 F.2d 751, 754 (10th Cir. 1977); *see also Halifax Cty., Va. v. Lever*, 718 F.2d 649, 652 (4th Cir. 1983) ("What they are asking the District Court to do is grant them by way of relief in this proceeding

in the District Court . . . exactly what it sought and was denied . . . in the administrative proceeding."); *Caribou Four Corners Inc. v. American Oil Co.*, 628 F. Supp. 363, 371 (D. Utah 1985) ("[T]o avoid a direct challenge to Agency action, plaintiff has brought this common law action against other participants in the [agency] Program based upon various state common law theories. However, the only justification for these defendants' involvement in the lawsuit is because of an Agency decision.").

Indeed, NLMK's allegations that U. S. Steel misled and defrauded Commerce into denying NLMK's exclusion only amplify this conclusion. *See* Compl. ¶¶ 8, 46, 49, 58-59, 66-68. As with other forms of collateral attacks on agency decisions, state-law fraud-on-a-federal-agency claims are preempted by federal law. *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341, 347-53 (2001). As the Supreme Court has explained, state regulation of the "inherently federal" relationship between private parties and the federal government necessarily risks obstructing the federal government's policies. *Id.* at 347; *see also Orelski v. Pearson*, 337 F. Supp. 2d 695, 703 (W.D. Pa. 2004) (subjecting defendants "to differing standards of conduct and potential liability under fifty different sets of state laws" for interactions with the federal government "would frustrate the Congressional objectives" at issue).

In *Buckman*, where the plaintiff alleged that the defendant had committed fraud on the FDA, the Court explained that "[t]he conflict stems from the fact that the federal statutory scheme amply empowers the FDA to punish and deter fraud against the Administration, and that this authority is used by the Administration to achieve a somewhat delicate balance of statutory objectives." 531 U.S. at 348. Yet if state-law claims were permitted, "fraud-on-the-FDA claims would . . . cause applicants to fear that their disclosures to the FDA, although deemed appropriate by the Administration, will later be judged insufficient in state court," effectively

destroying the FDA's ability to dictate the bounds of permissible conduct before it. *Buckman*, 531 U.S. at 351. Thus, fraud-on-a-federal agency claims are barred where they "would require litigation of the alleged underlying [regulatory] violation in a circumstance where the [agency] has not itself concluded that there was such a violation." *Frompovicz v. Niagara Bottling, LLC*, 313 F. Supp. 3d 603, 616 (E.D. Pa. 2018) (quoting *PhotoMedex, Inc. v. Irwin*, 601 F.3d 919, 924 (9th Cir. 2010)). That is precisely the case here, as the Court's Order denying the Motion to Remand recognized. (*See* Dkt. No. 34 at 20-21 (noting requirement that NLMK prove that U. S. Steel made false representations that proximately caused Commerce to deny the exclusion requests).)

Because Commerce denied NLMK's exclusion requests, here as in *Kalo Brick*, "[t]hese findings by the [agency], made pursuant to the authority delegated by Congress, simply leave no room for further litigation over the matters" that NLMK attempts to raise in this suit. 450 U.S. at 327. In other words, "the judgments of fact and of reasonableness necessary to the decision have already been made by the [agency]." *Id*. NLMK simply seeks to "substitute the Secretary's judgment" on these matters "for that of twelve citizens." (Dkt. 34 at 26.) Claims requiring this second-guessing of a federal agency's judgment are squarely prohibited by federal law because they would "'stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)). Indeed, "[u]nder the Supremacy Clause, there is a presumption in favor of preemption in fields that are inherently federal in character and that the states have not traditionally occupied," including national security, foreign commerce, and fraud on a federal agency, all of which are directly implicated here. *Orelski*, 337 F. Supp. 2d

at 699.  Under federal law,  NLMK's attempt to reverse the economic consequences of Commerce's denial of its exclusion requests through this collateral litigation must be rejected.

Lastly, even viewed from a purely procedural perspective, NLMK's claim requires an impermissible collateral review of Commerce's decision-making.  As the Supreme Court has explained, "[i]t can hardly be doubted that Congress, acting within its constitutional powers, may prescribe the procedures and conditions under which, and the courts in which, judicial review of administrative orders may be had."  *City of Tacoma v. Taxpayers of Tacoma*, 357 U.S. 320, 336 (1958).  Where there is a process for regulatory and judicial review, then, "[i]t thereby necessarily preclude[s] de novo litigation between the parties of all issues inhering in the controversy, and all other modes of judicial review."  *Id*.  NLMK had (and pursued) options to challenge the denial of its exclusion requests.  NLMK first was entitled to renew its request and provide additional information or supporting evidence within the administrative context.  83 Fed. Reg. 12107, 12110; 15 C.F.R. Pt. 705, Supp. 1(c)(2).  To the extent NLMK was "aggrieved" by that outcome, it was permitted to file suit in federal court under 5 U.S.C. § 702 and 28 U.S.C. § 2631(i).  Indeed, NLMK did file suit with respect to many of the exclusion requests at issue in this case, later settled with the United States, and obtained entry of a stipulated judgment.  *See NLMK v. United States*, Case No. 20-00050, Dkt. 63 (C.I.T. Nov. 12, 2020).  The prescribed review process has thus been completed.  Allowing NLMK to duplicate or supplement this review process would eviscerate its exclusivity, in violation of federal law.

## III.    U. S. STEEL HAD A RIGHT TO PARTICIPATE AS IT DID IN THE SECTION 232 PROCESS UNDER BOTH FEDERAL AND STATE LAW.

Assuming *arguendo* that NLMK's novel unfair competition claim is viable (it isn't) and not preempted (it is), dismissal is still required because U. S. Steel is entitled to absolute

immunity from liability for its participation in the Section 232 proceedings on two independent grounds.

### A.     U. S. Steel Is Entitled To Federal *Noerr-Pennington* Immunity.

Under the long-standing doctrine of *Noerr-Pennington* immunity, a "party who petitions the government for redress generally is immune" from resulting liability.  *Cheminor Drugs, Ltd. v. Ethyl Corp*., 168 F.3d 119, 122, 128 (3d Cir. 1999).  As the Supreme Court explained in the case originally elucidating the doctrine, "The right of petition is one of the freedoms protected by the Bill of Rights, and we cannot, of course, lightly impute to Congress an intent to invade these freedoms."  *E. R. R. Presidents Conf. v. Noerr Motor Freight, Inc*., 365 U.S. 127, 138 (1961).  Because "the same First Amendment principles on which *Noerr–Pennington* immunity is based apply to [state] tort claims," the immunity also applies to common-law unfair competition claims like the one in this case.  *Cheminor Drugs*, 168 F.3d at 128.

*Noerr-Pennington* immunity squarely applies here:  "This immunity extends to persons who petition all types of government entities—legislatures, administrative agencies, and courts." *Id*. at 122; *see also California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972) ("Certainly the right to petition extends to all departments of the Government.").  Nor is there any doubt that NLMK's claim is entirely predicated on the position that U. S. Steel's advocacy induced Commerce to deny NLMK's exclusion requests.  (*See, e.g.,* Dkt. 28 ("Hearing Tr.") at 5-7 (counsel for NLMK stating "U. S. Steel . . . lobbied to have . . . an absolute bar so that there [would] be a 25% tariff on" all steel imports and used the objection process to achieve a similar result).)  Indeed, NLMK characterizes its case as "aris[ing] from U. S. Steel's efforts to unfairly compete with NLMK by brazenly abusing [the exclusion and objection] process." Compl. ¶ 11; *see also* Hearing Tr. at 15.  Moreover, the only injuries alleged in the Complaint

result from the denial of NLMK's exclusion requests. *See, e.g.*, Compl. ¶¶ 81-85 (alleging "NLMK's Damages Resulting from U. S. Steel's Anticompetitive Abuse of the Tariff Exclusion Process"). *Noerr-Pennington* immunity is apparent in these circumstances, where "the sole [alleged] injury is caused directly by the government action that the private defendant has helped to secure." *Armstrong Surgical Center, Inc. v. Armstrong Cty. Mem. Hosp*., 185 F.3d 154, 159 (3d Cir. 1999).

NLMK has not alleged any facts that would take this case outside *Noerr-Pennington*. The sole exception to *Noerr-Pennington* immunity recognized by the Supreme Court and the Third Circuit is the so-called "sham" exception, and NLMK's allegations make clear that U. S. Steel's participation in Commerce's process was no sham. To establish petitioning as a "sham," the plaintiff must show that the challenged activity "'is not genuinely aimed at procuring favorable government action.'" *Id.* at 158 (quoting *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc*., 508 U.S. 49, 58 (1993) ("PRE")). In other words, a "sham" proceeding involves the use of "the governmental *process*—as opposed to the *outcome* of that process—as an anticompetitive weapon." *Columbia v. Omni Outdoor Advertising, Inc*., 499 U.S. 365, 380 (1991) (emphasis in original). So long as a party actually seeks to influence government action, immunity attaches.

The Complaint specifically alleges that U. S. Steel intended to procure favorable government action. Plaintiffs contend that "U. S. Steel hatched a scheme *to prevent its competitors from obtaining the tariff exemptions* to which they were plainly entitled. By misleading the Department into *denying exclusions* to its competitors, including NLMK, U. S. Steel could *force NLMK to pay unwarranted tariffs*." Compl. ¶ 46 (emphasis added). Similarly, the Complaint claims that "U. S. Steel . . . misrepresented to the Department of Commerce its

ability and willingness to produce and supply NLMK with steel slab *in order to induce Commerce to deny all of NLMK's requests . . . .*"  Compl. ¶ 87 (emphasis added).  As the Third Circuit has explained, "the sham petitioning exception does not apply in a case like [this] one . . . where the plaintiff has not alleged that the petitioning conduct was for any purpose other than obtaining favorable government action." *Armstrong Surgical*, 185 F.3d at 158.  NLMK, moreover, alleges that U. S. Steel's attempt to influence the Section 232 process was "'not only genuine but also highly successful,'" making clear that the sham exception has no application here.  *PRE*, 508 U.S. at 56 (quoting *Noerr Motor Freight*, 365 U.S. at 144).  NLMK alleges that U. S. Steel obtained the governmental action it sought—the denial of NLMK's exclusion requests—with each of its objections.  Under controlling precedent, "a successful 'effort to influence governmental action . . . certainly cannot be characterized as a sham.'" *PRE*, 508 U.S. at 58 (quoting *Allied Tube & Conduit Corp. v. Indian Head, Inc*., 486 U.S. 492, 502 (1988)) (ellipsis in original); *see also Armstrong Surgical,* 185 F.3d at 162 ("Liability for injuries caused by [government] action is precluded even where it is alleged that a private party urging the action did so by bribery, deceit or other wrongful conduct that may have affected the decision making process.  The remedy for such conduct rests with laws addressed to it and not with courts looking behind sovereign state action at the behest of [private tort] plaintiffs.").  Binding precedent controls this case, defeating any possible claim to relief based on the allegations in the Complaint.

> **B.**      **Under Pennsylvania Law, U. S. Steel's Statements During The Section 232 Objection Process Are Absolutely Privileged.**

In addition to federal *Noerr-Pennington* immunity, U. S. Steel's statements in the Section 232 process are also protected by Pennsylvania judicial privilege.  Judicial privilege in Pennsylvania is extended to all "quasi-judicial" proceedings and "all proceedings in which an

officer or tribunal exercises official functions." *Doe v. Wyoming Valley Health Care Sys., Inc.*, 987 A.2d 758, 766–67 (Pa. 2009). It thus extends to the Section 232 process, as that process is a "proceeding[] in which an officer or tribunal exercises official functions" by determining whether to grant exclusion requests. *Id.* And Commerce certainly has "powers of discretion in applying the law to the facts," the mark of a quasi-judicial proceeding. *Milliner v. Enck*, 709 A.2d 417, 419-20 & n.1 (Pa. Super. Ct. 1998).

The judicial privilege is "absolute" in Pennsylvania, meaning that alleged abuse of process cannot defeat the privilege. *Milliner*, 709 A.2d at 420-21. And like *Noerr-Pennington*, the sole exception to Pennsylvania judicial privilege is where the underlying suit was both objectively and subjectively baseless. That is, "liability for the wrongful use of civil proceedings occurs only when litigation is instituted both without probable cause *and primarily for a purpose other than* that of securing the proper adjudication of the claim in which the proceedings are based." *Silver v. Mendel*, 894 F.2d 598, 604 (3d Cir. 1990) (applying Pennsylvania judicial privilege) (emphasis added). Thus, like *Noerr-Pennington* immunity, NLMK's allegations that U. S. Steel misled Commerce into denying exclusions do nothing to defeat U. S. Steel's judicial privilege.

## IV.   NLMK FAILS TO PLEAD ANY PLAUSIBLE FRAUD OR MISREPRESENTATION BY U. S. STEEL.

Even if NLMK could overcome the foregoing legal hurdles, its Complaint fails to meet federal pleading standards. NLMK's claim sounds in fraud, and hence the Complaint must meet the heightened pleading standards of Rule 9(b). Compl. ¶¶ 58-59, 66, 68; *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 347 (3d Cir. 2010*)*. It utterly fails to do so.

NLMK alleges U. S. Steel intentionally misled Commerce in two ways: First, that U. S. Steel represented it could produce 10" steel slab when it was unable to do so, and second, that

U. S. Steel represented it could produce 36 million tons of steel slab when its true capacity was lower. The problem for NLMK is that U. S. Steel never made either of these representations, as even a cursory examination of the actual record of requests and objections reveals.[2]

**A.      NLMK Fails To Plead Any Fraud About The Volume Of Steel Slab.**

NLMK alleges that "U. S. Steel *expressly* committed to producing and being willing to provide over 36 million tons of steel slab to its competitors." Compl. ¶ 15 (emphasis added); *see also* Compl. ¶ 73. False: U. S. Steel never represented it could produce "over 36 million tons" of steel slab. To the contrary and as NLMK well knows, U. S. Steel specifically disclosed its actual production capacity directly to Commerce. By way of example, U. S. Steel's objection to Exclusion Request 111734 reflects that U. S. Steel represented only that it could produce 100% "of the total product tonnage requirement covered under *the Exclusion Request that is the subject of this Objection Filing*." (Ex. B (emphasis added)). NLMK does not allege that U. S. Steel was unable to produce 93,831 metric tons (the amount requested in Exclusion Request 111734) at the time it filed this objection, or that U. S. Steel was unable to produce 100% of the amount of *any* individual exclusion request to which it objected.

Instead, NLMK's "36 million ton" theory of liability is based on sleight-of-hand: Rather than cite any instance where U. S. Steel actually represented it had a 36 million ton production capacity, NLMK alleges that aggregating the tons covered by U. S. Steel's "spate of over 450 objections" somehow entails an implied representation that it "could supply *36 million tons* of slab to its domestic competitors." Compl. ¶ 73 (emphasis in original).

---

[2] Importantly, all of the requests and objections are incorporated by reference in NLMK's complaint (and are a matter of public record in most instances), and hence the Court can and should consider that record when ruling on this Motion. *Pension Ben. Guar. Corp.*, 998 F.2d at 1196.

NLMK's claim fails because it fails to explain *how* U. S. Steel's statements entailed fraud. *In re Rockefeller Ctr. Properties, Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002) ("Rule 9(b) requires . . . the who, what, when, where and *how*.") (emphasis added and quotation marks omitted). In light of their literal truth, U. S. Steel's objections could be fraudulent only if they "departed from reasonable [objecting] practices." *Christidis v. First Pennsylvania Mortg. Tr.*, 717 F.2d 96, 100 (3d Cir. 1983). So to satisfy Rule 9(b), NLMK was required to explain "[w]hat those practices are and how they were departed from." *Id.* NLMK's Complaint fails to do so and must be dismissed.

Indeed, any inference of fraud or misrepresentation is affirmatively refuted by the fact that U. S. Steel specifically disclosed to Commerce its *actual* production capacity. Specifically, U. S. Steel repeatedly provided Commerce with detailed breakdowns of the company's domestic production capacity and utilization rates in its objection-related filings:



(*See* Ex. G.) These disclosures expressly note that, according to historical utilization data from 2019, U. S. Steel could produce ██████████████████████████████████ ███████████████████████████████████████████ (*Id.*) These disclosures are consistent with U. S. Steel's public filings with the SEC, which plainly disclose a production capacity far less than 36 million metric tons. *See, e.g.*, U. S. Steel 2020 10-K at 22; U. S. Steel 2019 10-K at 19; U. S. Steel 2018 10-K at 19.

In light of these express disclosures, there is no basis to plausibly infer that U. S. Steel made intentional or fraudulent misrepresentations about its production capacity, or that any such misrepresentations were ultimately material to Commerce's decisions. *See, e.g., Fan v. StoneMor Partners LP*, 927 F.3d 710, 716–17 (3d Cir. 2019) (affirming dismissal of claims where "statements Plaintiffs identify as fraudulently misleading are rendered immaterial given the pertinent disclosures"). The Complaint therefore fails as to those allegations.

**B.     NLMK Fails To Plead Any Fraud About The Dimensions Of Steel Slab.**

NLMK's 10-inch slab allegations fail for the same reason. According to NLMK, "U. S. Steel represented that it was capable of providing NLMK with all of the 10-inch slab it needed" even though "U. S. Steel did not then have and does not now have a single domestic facility capable of making any 10-inch slab." Compl. ¶¶ 17, 50, 55. This allegation is also false. U. S. Steel never stated that it could produce 10" steel slab; U. S. Steel stated that the dimensions of slab it could produce would function as an "adequate substitute" for 10" slab. Because Commerce agreed with U. S. Steel's position on substitute products, it is necessarily correct as a matter of federal law and cannot now be reversed.

Instead of citing an affirmative statement by U. S. Steel that it could make 10" slab (there are none), the Complaint alleges that it was misleading for U. S. Steel to answer "Yes" to an objection form question, "Is the product type identified in the Exclusion Request currently manufactured by your organization in the United States, or can it immediately be made (within 8 weeks) by your organization, in a company-owned plant in the United States?" in a subset of its objections to requests involving 10-inch slabs. Compl. ¶ 51.

This is just more sleight-of-hand from NLMK: The Complaint cannot and does not allege that the phrase "product type" as used on the form entails any type of representation about

specific slab thickness.  NLMK's "full, complete description of the product" at issue, in fact, does not include precise slab thickness:

> For this single Exclusion Request, provide a full, complete description of the product in the space provided below.See explanation below.
> The product for which an Exclusion is being requested is defined as follows: *
>
> Semifinished products of iron or nonalloy steel: Containing by weight less than .25 percent of carbon: Other, of rectangular (other than square) cross section, having a width measuring at least four times the thickness (steel slabs).

(Ex. A.)

For later objections (after Commerce had modified the objection form), the Complaint asserts that it was "false" for U. S. Steel to answer "yes" to a question asking whether it could produce an "adequate substitute" for the requested 10" steel slabs.  Compl. ¶ 63.  Commerce, however, has already determined that U. S. Steel's slightly thinner steel slabs *are* an "adequate substitute" for the 10" steel slabs as that term is used in the governing regulations and the objection form.  (*See* Ex. H.)  U. S. Steel's response to this question was accepted as accurate by Commerce, and hence is accurate, as a matter of federal law.  *See Kalo Brick*, 450 U.S. at 327.

Moreover, as with production capacity, NLMK cannot meet federal pleading standards because U. S. Steel enumerated to Commerce the dimensions of steel slab it could produce and *never* suggested it could produce 10-inch slab:  "All U. S. Steel steelmaking facilities are capable of providing the chemistry composition cited in the subject exclusion request.  Liquid steel can be continuously cast into slab form at 8.00", 8.75", 9.11", 9.60" and 12.00" thicknesses, at widths through 106", and variable lengths through 480"."  (Ex. I, U. S. Steel Objection to Exclusion Request 706; *see also* Ex. B (listing the same dimensions).)  U. S. Steel also emphasized in its objections and sur-rebuttals that what it could produce was a slab of "***similar***

thickness" and that the "dimensions of U. S. Steel's slabs are not in dispute," only the suitability of U. S. Steel's slabs as a "*substitute* product." (*See* Ex. G.) (emphasis added).

As Commerce summarized, "***NLMK claims AK Steel's and U. S. Steel's products are too thin*** to meet the required slab weights and lengths that will fit in the NLMK facility." (Ex. H (emphasis added).) But "[b]ased on technical factors, the SME found the AK Steel and U.S. Steel objection offerings to be suitable substitutes." (*Id.*) As a matter of federal pleading standards, there can be no plausible inference that U. S. Steel represented to Commerce that it could produce 10" slab when, in fact, U. S. Steel clearly said it could not do so, *see Fan*, 927 F.3d at 716–17, nor can there be any plausible inference that U. S. Steel's products were not suitable substitutes when Commerce decided otherwise, *see Kalo Brick*, 450 U.S. at 327.

## CONCLUSION

For the foregoing reasons, Defendant U. S. Steel requests that the Court dismiss the Complaint in its entirety with prejudice under Rule 12(b)(6).


Dated: August 30, 2021

Leon F. DeJulius, Jr. (Pa. #90383)
Kelly C. Holt (Mass. #703505)*
JONES DAY
250 Vesey Street
New York, NY 10281
Tel: (212) 326-3939
Fax: (212) 755-7306
lfdejulius@jonesday.com
kholt@jonesday.com
*Admitted pro hac vice*

Respectfully submitted,

/s/ *Andrew R. Stanton*
Andrew R. Stanton (Pa. #93409)
Roy Powell (Pa. #37487)
Tarek Abdalla (Pa. #59924)
Simone DeJarnett (Pa. #321045)
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, PA 15219
Tel: (412) 391-3939
Fax: (412) 394-7959
astanton@jonesday.com
rapowell@jonesday.com
tabdalla@jonesday.com
sdejarnett@jonesday.com

*Counsel for U. S. Steel*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 30, 2021, a copy of the foregoing Defendant United States Steel Corporation's Memorandum in Support of Motion to Dismiss was filed electronically. Notice of the public version this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. I further certify that I have served the sealed version of this filing on all counsel of record via email.

 /s/ *Andrew R. Stanton*
Andrew R. Stanton
*Counsel for U. S. Steel*
